ALBERT V. BRYAN, Senior' Circuit Judge:
The Riggs National Bank of Washington, D.C., a secured creditor, petitions this Court for further security for its loan to John Gillis Perry, Jr. Specifically, Riggs *984 asks us to protect it from an automatic stay which allows debtors to attempt repayment, reorganization or relief through the provisions of the Bankruptcy Code without any collection efforts, foreclosure or harassment by their creditors. See 11 U.S.C. § 362(a). Because Perry continues • to make timely payments, we do not see Riggs as being in a position any more precarious than the customary installment creditor. In this conclusion we are in complete accord with the District Judge’s thorough analysis and, with him, decline to disturb the stay imposed by Chapter 7 of the Code before discharge is either granted or denied.
I
Riggs is the holder of a secured interest in Perry’s 1980 Audi 5000 sedan automobile by virtue of the terms of the instrument evidencing his purchase, wherein Perry agreed to pay the sale price on an installment basis. He thereafter filed a petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701-66 triggering the automatic stay provided in section 362(a); that stay normally remains in effect from the time a petitioner files under Chapter 7 until a Bankruptcy Court rules on a discharge request. See 11 U.S.C. § 362(c)(2)(C). However, Riggs then filed a complaint seeking to modify the stay in the Federal Bankruptcy Court for the District of Maryland pursuant to 11 U.S.C. § 362(d).[1] That section allows relief from the automatic stay “for cause, including the lack of adequate protection of an interest in property.” The bank, pleading that Perry was in arrears in his payment obligations, sought to begin default proceedings to compel him to surrender the automobile, contending that the value of the security would otherwise shrink because of its depreciable nature.
Although Perry had been tardy in over half of his payments as of the hearing date, the Bankruptcy Court observed that he was then current and denied the relief prayed. This decision was upheld by an en banc panel of the Bankruptcy Court, as well as by the District Court, which ruled “that no cause [had] been shown to justify modification of the stay and that any decision regarding [Riggs’s] ultimate rights with respect to the automobile must be postponed until there is a disposition of Perry’s Chapter 7 petition.” 29 B.R. 787, 795 (D.C.D.Md.1983).
II
Before us, on appeal, Riggs maintains that Perry breached the sales agreement’s “default-upon-filing” clause, which stipulates that the purchaser shall be deemed in default of the agreement upon the commencement of any bankruptcy proceeding by or against the purchaser. This default, the bank insists, qualifies as “cause” within the meaning of 11 U.S.C. § 362(d)(1) to modify the stay.
The enactment of the Bankruptcy Code, and in particular the stay provision, evinced a clear Congressional purpose to create a way by which debtors may obtain a fresh start towards reorganization of their financial obligations.[2] This Court’s enforcement *985 of a default-upon-filing clause would clearly intrude upon that policy since any such default would deprive the debtor of the advantages of the Code’s liquidation procedures; this result follows from the working of section 362(d)(1). Thus, a debtor could not file under Chapter 7 to invoke the automatic stay without assuring its demise due to his default under the contract. Accordingly, we align ourselves with the District Court and other Federal courts that have held default-upon-filing clauses unenforceable as a matter of law. See, e.g., Matter of Rose, 21 B.R. 272, 276-77 (Bkrtcy.D.N.J.1982); In re Horton, 15 B.R. 403, 405 (Bkrtcy.E.D.Va.1981).
Ill
Regardless of the vitality of the default-upon-filing clause, Riggs gives other reasons in support of its contention that they are inadequately protected, and that we should modify the stay. First, it asserts that the Chapter 7 filing itself constitutes a constructive default, since a Bankruptcy Court may thereafter absolve Perry of any personal liability under the installment sales agreement. If Perry’s obligation is discharged, however, the bank retains a lien against the automobile to the extent of its value. See In re Rosenow, 22 B.R. 99, 100 (Bkrtcy.W.D.Wash.1982); Matter of Sawyer, 18 B.R. 661, 662 (Bkrtcy.D.Idaho 1982); In re Weathers, 15 B.R. 945, 951-52 (Bkrtcy.D.Kan.1981). The bank’s sole legitimate concern, therefore, is that its lien exceeds the present value of the collateral. Allegedly, it is placed at even greater risk because of the highly deprecia-ble character of its security. Nevertheless, appellant’s position is no more fragile, due to the Chapter 7 filing alone, than that of any lender under an installment sales contract. We can muster even less sympathy for institutional lenders; they are fully cognizant of the risks inherent in the making of loans, default among them, and receive substantial interest payments to help offset those risks. This Court declines to exact additional obligations from debtors who merely file under Chapter 7 while they maintain their fiscal responsibilities.
Appellant Riggs further suggests that we are required to grant it relief from the stay due to the exception found in section 362(d)(2). That provision states that modification of a stay of an act against property is appropriate “if the debtor does not have an equity in such property; and ... such property is not necessary to an effective reorganization.” While this clearly applies to real property mortgage foreclosures, we cannot believe the Congress intended that we modify a section 362(a) stay every time the value of a debtor’s personal property drops below the balance due on the outstanding loan. But see In re Stewart, 3 B.R. 24 (Bkrtcy.N.D.Ohio 1980). The Senate Judiciary Committee’s comments on this provision of the Code support our interpretation: “In cases where the single asset of the debtor is real property, the court shall grant relief from the stay if the debtor has no equity in the collateral, thereby allowing the creditor to proceed with his foreclosure.” (Emphasis added). S.Rep. No. 989, 95th Cong., 1st Sess. 5, reyrinted in 1978 U.S.Code Cong. & Ad.News, 5787, 5791.
Riggs also directs our attention to the sales agreement’s proviso that allows the bank to declare the entire outstanding balance at once due and payable upon the buyer’s default. While Perry admittedly fell behind in his monthly payments prior to his Chapter 7 institution, the bank’s asserted right to accelerate all remaining payments conflicts with the debtor’s right to the séction 362(a) stay. Maintenance of that stay until the discharge issue has been settled will not result in undue hardship for Riggs as long as Perry pays the monthly installments.
IV
An alternative theory of Riggs postulates that to maintain possession of the *986 collateral, a Chapter 7 petitioner must either reaffirm the loan agreement pursuant to 11 U.S.C. § 524(c)[3] or redeem the collateral in accordance with 11 U.S.C. § 722.[4] Although another Federal Circuit Court has concluded that a debtor may not retain possession of collateral after filing under Chapter 7 absent reaffirmation or lump-sum redemption, see In re Bell, 8 B.R. 549 (Bkrtcy.E.D.Mich.), rev’d, 15 B.R. 859 (D.C.E.D.Mich.1981), aff'd, 700 F.2d 1053 (6th Cir.1983),[5] we do not reach the issue of whether these provisions are mandatory or elective. Rather, we only observe that the section 362(a) stay continues to run until discharge is granted or denied, see 11 U.S.C. § 362(c)(2)(C), and that Perry has the option of ¿xercising his right to reaffirm or redeem until the expiration of that stay. See In re Cruseturner, 8 B.R. 581, 592 (Bkrtcy.D.Utah 1981) (reaffirmation and redemption rights run concurrently with the stay). For this reason, we must reject Riggs’s argument.
V
In sum, it is imperative that Perry, so long as his discharge petition is under consideration, not be denied the rights and privileges accorded him by the Bankruptcy Code.
The judgment will be
AFFIRMED.

. Section 362(d) provides in full:
(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
(2) with respect to a stay of an act against property, if—
(A) the debtor docs not have an equity in such property; and
(B) such property is not necessary to an effective reorganization.

. The House Report on the Bankruptcy Reform Act of 1978 staled:
The automatic slay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It slops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
*985 H.R.Rep. No. 595, 95th Cong., 1st Scss. 340 (1977), reprinted, in 1978 U.S.Code Cong. & Act News, 5787, 5963, 6296-97.

. § 524(c) allows the debtor and .creditor to enter into a "reaffirmation” agreement prior to discharge of the debt if the court approves.

. § 722 provides:
An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dis-chargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying -the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

.That case, however, is distinguishable from the one at bar in that the bankruptcy trustee in In Re Bell sought to abandon the automobile.