**In re Joseph CASSELL, Debtor.**

**Bankruptcy No. 83–00518–A.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Aug. 13, 1984.

Richard G. Hall, Annandale, Va., for debtor.

Graham C. Huston, Washington, D.C., for Riggs Nat. Bank of Washington, D.C..

Gerald M. O'Donnell, Alexandria, Va., Trustee.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

This matter arises out of the motion of a secured creditor, Riggs National Bank of Washington, D.C. ("Riggs"), to reconsider a prior ruling. On September 28, 1983, this Court allowed Joseph Cassell ("Cassell"), debtor herein, to redeem an automobile on which Riggs had a security interest. The Court heard argument on November 22,

1983 on the Bank's motion for reconsideration and took the matter under advisement.

On November 29, 1979, debtor entered into a conditional sales contract for the purchase of a 1980 Dodge Colt automobile from Brown's Tysons Corner Dodge, Inc. The contract provided for 48 monthly payments of $199.75 each. The sales contract was then assigned to the Bank which attained a purchase money security interest in the automobile.

Debtor filed his Chapter 7 bankruptcy petition on April 22, 1983. Debtor claimed his equity in the above-mentioned automobile as exempt. On June 22, 1983, the Trustee in Bankruptcy filed a notice to abandon the automobile. No objections were filed, with the resulting abandonment of the vehicle.

The Bank received a Notice of Bankruptcy on or about May 1, 1983 which was issued and mailed to all creditors of the debtor. Following its policy, the Bank referred debtor's file to its attorneys. The Bank's attorneys contacted Cassell's counsel and offered to enter into a reaffirmation agreement. When informed by the Bank's attorneys that they would prepare the document and, pursuant to the sales contract a 15% attorney's fee would be assessed, debtor's counsel indicated he would have to confer with his client.

Debtor was granted a discharge by this Court on July 26, 1983 without reaffirming his debt or redeeming the subject automobile. Under the sales contract, debtor was in default for his failure to maintain insurance on the automobile, through his filing of the bankruptcy petition and, according to the Bank, because the discharge of debtor's personal liability under 11 U.S.C. § 524(a) constructively vitiated the contract. As a result, the Bank repossessed the automobile on August 8, 1983. On August 26, 1983, debtor moved to reopen the bankruptcy case in order to redeem the automobile under 11 U.S.C. § 722. This Court entered an Order reopening the bankruptcy case on August 31, 1983.

During the hearing held on debtor's motion to redeem, the evidence revealed that debtor had kept current in all of his payments to the Bank. Debtor had even made his payments during the period in which the car had been repossessed. As a result, the debtor had a balance due on the car, as of September 28, 1983, of $592.24, which was stipulated to by the parties. The Bank maintained during the hearing that for the debtor to redeem the vehicle, the entire amount secured had to be paid. This amount included the 15% attorney's fees, amounting to $240.02, the repossession fee of $140.00 and storage charges, which at $3.00 per day, were in excess of $150.00 at the time of the hearing. At the conclusion of the hearing, the Court ruled that debtor could redeem the automobile by paying the balance due of $592.24 and by paying $50.00 in attorney's fees.

By written and oral argument, the Bank's position is as follows. Because of debtor's being discharged, the automatic stay imposed by 11 U.S.C. § 362(a) has terminated. As a result, the repossession of the automobile pursuant to the Bank's rights under the sales contract was not in violation of the automatic stay.

The Bank maintains that its act of repossession was permissible under the sales contract because of three separate breaches of the agreement committed by debtor. Initially, under the sales agreement, the filing of a case in bankruptcy accelerated all amounts due. Debtor did not make those payments, defaulting under the contract. Secondly, the Bank argues that a discharge of debtor extinguished his personal liability. Thus, the Bank's sole remedy was against the collateral, a highly depreciable asset, which the Bank determined to repossess in order to protect itself. Finally, by failing to maintain physical damage insurance, the debtor was in default of the sales agreement.

Citing a recent decision of the Sixth Circuit Court of Appeals, the Bank contends that in order to maintain possession of the automobile after filing bankruptcy, the debtor had to either reaffirm the debt with the Bank or redeem the vehicle in a lump sum payment prior to the entry of the

discharge order. *In re Bell*, 700 F.2d 1053, 1056–57 (6th Cir. 1983). The *Bell* court premised its decision by upholding the validity of a "due-on-bankruptcy" clause similar to the one *sub judice*. *Id*. at 1058. The appellate court went on to hold that redemption and reaffirmation are the exclusive methods by which a debtor can retain possession of secured collateral. *Id*.

Riggs maintains that by failing to proceed by one of the two above methods before the order of discharge was entered, Cassell may not redeem the subject vehicle post-discharge. Section 722 permits a debtor to redeem tangible personal property from a lien securing a dischargeable consumer debt. 11 U.S.C. § 722. Riggs argues that because Cassell has been granted a discharge, the Bank's lien no longer secured a "dischargeable consumer debt," and the redemption remedy is not appropriate.

Additionally, the Bank contends that because sections 722 and 524(c) are the exclusive means by which a debtor may continue to possess secured collateral, consulting those sections indicates that the remedy must be selected pre-discharge. The Bank argues that the reaffirmation remedy provides a procedure which complements the redemption remedy. Under section 524(c)(1), a reaffirmation agreement must be negotiated and presented to the court prior to the granting of a discharge. Furthermore, section 524(c)(4)(B)(ii) specifically permits the exercise of the debtor's redemption right through a reaffirmation agreement. Riggs argues that it would be inconsistent to require a debtor who wishes to redeem through reaffirmation to do so prior to the granting of discharge but permit a debtor to tender a lump sum redemption after the debt secured by the collateral already has been discharged.

Riggs concludes by arguing that if the redemption is allowed all of the charges secured by the lien on the vehicle must be paid under 11 U.S.C. § 506(b). In this instance, the value of the security is more than adequate to cover the additional charges such as attorney's fees, reposses-

sion charge and storage fees. Riggs contends that under the provisions of the sales agreement and under the Uniform Commercial Code as enacted in Virginia, the debtor is required to tender all costs of retaking and storage before he is entitled to redeem the vehicle. This position is valid only if the Bank had a right to repossess the automobile. For the following reasons, this Court holds that the Bank had no such right.

Following the initial hearing, this Court ruled that the debtor had the right to redeem the automobile post-discharge. This Court has heard no argument since that ruling which would lead it to hold otherwise. Section 722 contains the conditions precedent to the implementation of the right of redemption. Among those conditions are: the property must be consumer goods; the debt must be dischargeable; and the property must be exempted under section 522 or have been abandoned under section 554. 11 U.S.C. § 722. In this case, the vehicle represents a consumer debt being intended primarily for "personal, family, or household" use. 11 U.S.C. § 101(7). The trustee abandoned the vehicle and the debtor claimed his equity in the automobile as exempt. All that remains is that the debt be dischargeable.

■ Riggs argues that by using the word "dischargeable" Congress intended to indicate that the right of redemption must be exercised pre-discharge. It further maintains that after a discharge has been granted, debts are "discharged" rather than "dischargeable." Nothing in the legislative history of section 722 supports the Bank's position. Additionally, in the most recent decision in the Fourth Circuit to consider this issue, the Fourth Circuit Court of Appeals declined to rule whether a debtor must elect to reaffirm a debt or redeem property prior to discharge in order to retain possession of collateral. *Riggs National Bank of Washington, D.C. v. Perry*, 729 F.2d 982, (4th Cir.1984). The *Perry* court only went so far as to indicate that the automatic stay provided a debtor with the option of choosing his remedy at

least until a discharge was granted. The *Perry* court stated:

> we do not reach the issue of whether these provisions [11 U.S.C. §§ 524(c), 722] are mandatory or elective. Rather, we only observe that the section 362(a) stay continues to run until discharge is granted or denied, · see 11 U.S.C. § 362(c)(2)(C), and that Perry has the option of exercising his right to reaffirm or redeem until the expiration of that stay.

*Id.* at 985–86. Subsequent to being granted a discharge, a debtor has no such option in that a debt may not be reaffirmed post-discharge. 11 U.S.C. § 524(c)(1).

The more reasonable reading of "dischargeable" in the context of section 722 is that it refers to the type of debt involved, not whether discharge has been granted. 4 *Collier on Bankruptcy*, ¶ 722.03 at 722.5 (15th ed. 1984). That is to say, the term refers to those debts which are not excepted from discharge under 11 U.S.C. § 523. We find no precedent *contra* to our prior ruling in the original hearing on this matter that the debtor has the right to exercise his right of redemption after he received his discharge.

■ The granting of a request to reopen a bankruptcy estate lies within the sound discretion of the bankruptcy court. *Matter of Seats*, 537 F.2d 1176, 1177–78 (4th Cir. 1976). A court may reopen the case to provide relief to the debtor or other good cause. 11 U.S.C. § 350(b). In the case *sub judice*, this Court reopened the case pursuant to debtor's motion to redeem an automobile.

■ The effect of reopening a case is to put the bankruptcy estate back into the process of administration. *Bumb v. Bonafide Mills, Inc.*, 327 F.2d 544, 546–47 (9th Cir.1964). The original bankruptcy is revived including all the procedural and substantive rights of the debtor. *Matter of MCI, Ltd.*, 19 B.R. 897, 899 (Bankr.E.D. Wis.1982); *see Matter of Becker's Motor Transp., Inc.*, 632 F.2d 242, 244–45 (3rd Cir.1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1358, 67 L.Ed.2d 341 (1981) (1898 Act governs proceedings instituted prior to Oc-

tober 1, 1979 but reopened after that date). Such rights would include the right of redemption under section 722.

Under section 541, the subject automobile became property of the bankruptcy estate upon Cassell's filing of his petition in bankruptcy. 11 U.S.C. § 541(a)(1). The filing of the petition operated as a stay of "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). This property, of course, included the subject automobile. Cassell claimed the automobile as exempt. Because no party in interest objected to the exemption, the trustee having abandoned the property, the automobile passed from the estate to the debtor. At that time, the protection of the automatic stay under section 362(a)(4) terminated. 11 U.S.C. § 362(c)(1). The automobile was still protected by the automatic stay, however, under section 362(a)(5) which protects "property of the debtor." 11 U.S.C. § 362(a)(5). Thus, Riggs would have been prevented from enforcing its lien until such time as the case was closed, the case was dismissed or a discharge was granted. 11 U.S.C. § 362(c)(2). *Riggs National Bank of Washington, D.C. v. Perry*, 729 F.2d 982, 984 (4th Cir.1984); *In re Berry*, 11 B.R. 886, 889 (Bankr.W.D.Pa.1981); *In re Cruseturner*, 8 B.R. 581, 592 (Bankr.D.Utah 1981). In this case, of course, Riggs did not repossess the automobile until after Cassell received his discharge.

■ Riggs bases its motion for reconsideration on three separate grounds of default of the sales contract which it maintains occurred. The first instance of default is based upon the existence of an acceleration clause triggered by the debtor's filing a petition in bankruptcy. Recently, the Fourth Circuit Court of Appeals has held that such "default-upon-filing" clauses are unenforceable as a matter of law. *Riggs National Bank of Washington, D.C. v. Perry*, 729 F.2d at 984–85; *see, e.g., Matter of Rose*, 21 B.R. 272, 275–78 (Bankr.D.N.J.1982). Thus, such a

clause may not serve as grounds for alleging default.

Furthermore, Riggs maintains that the granting of a discharge which would eliminate Cassell's personal liability vitiates the sales contract. The *Perry* court addressed this point as well. 729 F.2d at 985. Initially, the appellate court noted that although a debtor receives his discharge, the Bank retains its lien against the vehicle. *Id.; see, e.g., Matter of Cassi,* 24 B.R. 619, 626 (Bankr.N.D.Ind.1982); *In re Rosenow,* 22 B.R. 99, 100 (Bankr.W.D.Wash.1982); *In re Weathers,* 15 B.R. 945, 951–52 (Bankr.D. Kan.1981). The elimination of debtor's personal liability results in the necessity of the Bank looking entirely to the collateral for security. The *Perry* court noted, however, that nothing inherent in the bankruptcy filing makes the Bank's position any more tenuous than that of any creditor under an installment sales contract. 729 F.2d at 985. The court refused to exact additional obligations from a debtor who is current on his financial responsibilities merely because he files a liquidation proceeding. *Id.* The Fourth Circuit concluded by stating that banks are aware of the risks in making loans and receive "substantial interest payments" to offset those risks. *Id.* As a result, the *Perry* decision eliminates the Bank's second ground for alleging a default of the sales contract.

The final ground of default alleged by Riggs is the failure of Cassell to maintain physical damage insurance on the automobile. Under paragraph 5 of the conditional sales agreement, the insurance was to be in the amount of the unpaid installments of the contract price. The same provision authorized the Bank to obtain insurance for the vehicle at the purchaser's cost if the purchaser failed to do so.

In order for a party to elect to treat a contract as terminated based upon a breach of contract, the breach must be material, "substantially defeating the purpose of the contract." *See Mansfield v. Orr,* 545 F.Supp. 118, 121 (D.Md.1982); *Equitable Trust Co. v. G & M Constr. Corp.,* 544 F.Supp. 736, 742 (D.Md.1982); *Matzelle v.*

*Pratt,* 332 F.Supp. 1010, 1012 (E.D.Va. 1971). Paragraph 5 of the sales agreement providing that insurance be maintained on the automobile protected the secured party's interest in the property. To provide the broadest protection possible, the Bank was authorized by the sales agreement to obtain insurance, billing the cost thereof to the purchaser.

Evidence adduced at trial indicated that the Bank became aware of the insurance carrier's notice of termination shortly after July 21, 1982. The Bank, however, failed to obtain any insurance or to repossess the vehicle until fourteen months later, on August 8, 1983. As of the September 1983 hearing date, the Bank still believed that Cassell had not obtained insurance coverage. The act of repossession occurred shortly after debtor was granted his discharge and had failed to tender payments to Riggs in excess of the regular principal and interest payments. The Court indicated in its ruling during the September 28, 1983 hearing that although the failure to maintain insurance may have been a breach of the contract, the breach apparently was not sufficiently material to cause the Bank to act to protect its interest until more than one year had expired after it had received the notice of termination.

Additionally, the Bank's own conduct indicates a waiver on the Bank's part of its right to allege breach of contract based on the expiration of the insurance coverage. *Saverslak v. Davis-Cleaver Produce Co.,* 606 F.2d 208, 213 (7th Cir.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 762 (1980) (if party has relinquished known right by conduct inconsistent with intent to enforce that right, he has waived the right); *Pickens County v. National Sur. Co.,* 13 F.2d 758, 762 (4th Cir. 1926) (receipt of payments and continuation of contractual relationship for longer than one year indicates waiver). Such inaction is especially indicative of the lack of materiality of the breach when considered in conjunction with the ease with which the Bank could have protected itself. Furthermore, the Bank's long inactivity is particu-

larly disturbing to the Court in light of the Bank's argument that debtor's discharge vitiated the sales contract because of the highly depreciable nature of the collateral. This is the same collateral which the Bank knew was uninsured for over a year. This failure to act demonstrates to the Court that the Bank repossessed the vehicle not because of the failure to provide insurance but rather because of the "default-on-bankruptcy" clause and debtor's failure to pay the amounts then due under the contract, including attorney's fees which the Bank sought to impress on the debtor.

Furthermore, the Bank's failure to act after having knowledge of the expiration of the insurance for such a length of time indicates it may be guilty of laches. *See Mogavero v. McLucas*, 543 F.2d 1081, 1083 (4th Cir.1976) (elements of laches); *Olympia Werke Aktiengesellschaft v. General Electric*, 545 F.Supp. 598, 611–12 (W.D.Va. 1982), *aff'd* 712 F.2d 74 (4th Cir.1983); *Moore v. Exxon Transp. Co.*, 502 F.Supp. 583, 586 (E.D.Ga.1980) (prejudice inferred by lack of diligence). Under the circumstances, this Court cannot find Cassell's failure to maintain insurance on the automobile a material breach of the contract.

Thus, the sole issue remaining is the right of a secured creditor to repossess property that has been abandoned by the trustee and is now property of the debtor subsequent to the granting of a discharge. It has been held that where the filing of the bankruptcy petition was the sole event of default the debtor was entitled to possession of the automobile. *In re Brock*, 23 B.R. 998, 1004 (Bankr.D.C.1982). The *Brock* decision, while not controlling, nevertheless is persuasive.

The factual situations in *Brock* and in the instant case have many similarities. In both instances, the debtors failed to redeem automobiles and the bank repossessed the vehicles in reliance on the acceleration of payments clauses. In determining the "default-on-bankruptcy" clause unenforceable, the *Brock* court, while noting that the protections of Section 362(a)(5) expired with the granting of the discharge, nevertheless held that the debtor was still entitled to the protection "envisioned within the effects of discharge as set forth under § 524(a) of the Bankruptcy Code" setting forth the principal that the "effect of discharge under § 524(a)" should not alter the debtors' rights under the original obligation, absent any actual default and further that "the secured creditor stands basically in no worse situation than he was in prior to the filing of the petition in bankruptcy so long as the debtor continues to satisfy fully his obligations under the security agreement." *Id.* at 1002–04. In the instant case, Cassell has consistently made his payments to the Bank.

Finally, Riggs states that the Court's decision *sub judice* is directly in conflict with its decision in *In re Armknecht*, Case No. 83–00348–A, Adv. No. 83–0366–A, rendered August 23, 1983. *Armknecht*, however, was a bench ruling of this Court prior to the Fourth Circuit's decision in *Perry*. Where *Perry* is in conflict with *Armknecht*, it is, of course, controlling. For the foregoing reasons, the Bank's motion for reconsideration is denied.

An appropriate Order will enter.