**AMERICAN NATIONAL BANK & TRUST CO., Appellant,**

v.

**Cleveland L. DeJOURNETTE, and Annette G. DeJournette, Appellees.**

**No. Civ.A. 97–0049–D.**

United States District Court, W.D. Virginia, Danville Division.

May 22, 1998.

Luis Alberto Abreu, Clement & Wheatley, Danville, VA, for appellant.

Lewis E. Goodman, Jr., Danville, VA, for appellees.

Henry G. Bennett, Jr., Danville, VA, trustee.

## MEMORANDUM OPINION

KISER, Senior District Judge.

Before me now is American National Bank's appeal from an order of the United States Bankruptcy Court denying the Bank's motion to modify the automatic stay. Also before me is the DeJournettes' motion to dismiss the appeal. The parties have fully briefed the issues involved and have presented oral argument. The appeal and motion are, therefore, ripe for disposition. For the following reasons, the motion to dismiss is DENIED, the judgment of the Bankruptcy Court is REVERSED, and this matter is REMANDED to the Bankruptcy Court for proceedings consistent with this opinion.

## BACKGROUND

The DeJournettes ("Debtors" or "Appellees") are indebted to American National Bank ("Bank" or "Appellant") under a Note and Security Agreement dated December 22, 1994. The Bank loaned the DeJournettes $15,347.48 at a ten percent interest rate. The loan was secured by a first lien deed of trust on a 1987 Nissan Stanza and a John Deere tractor. The Note and Security Agreement provides, among other things, that (1) if an installment payment is 10 days late, the debtors will be assessed a late charge equal to five percent of the installment; (2) the debtors will pay reasonable attorneys' fees associated with collection, which shall equal not less than 25 percent of the unpaid balance and costs; and (3) the debtors will be in default if they fail to keep any of the promises contained in the agreement. The debtors defaulted on their obligation to American National Bank by failing to pay their monthly installments. Late charges accrued upon the occurrence of the default. The Bank also has incurred legal fees associated with collecting the amount of the default.

The debtors filed their joint petition for relief under Chapter 7 of the Bankruptcy Code on March 17, 1997. Pursuant to 11 U.S.C. § 362(a), an automatic stay took effect when the debtors filed for bankruptcy. Upon filing for bankruptcy, the debtors were also required to file a Schedule listing their assets and liabilities and a Statement of Intent pursuant to 11 U.S.C. § 521. In their Schedules, the debtors valued the collateral at $3,500 for the car and $10,000 for the tractor. In their Statement of Intent, the debtors stated an intent to retain possession of the collateral. They did not state an intent to reaffirm or redeem their obligation.[1]

The creditors' meeting was held on April 28, 1997. As of that day, the debtors were behind on their monthly payments and had failed to pay late charges in the amount of $214.06. The debtors also had not paid any of the Bank's attorneys' fees accumulated to

---

1. The debtors have stated their intention to continue making payments under the Note and Security Agreement. They have also indicated an intention to pay for the late charges and reasonable attorneys' fees at an indefinite time. They have refused to enter into a reaffirmation agreement which would bind them to make these payments, however.

that date. At the creditors' meeting, appellant requested the debtors reaffirm their obligation. The proposed agreement would have reaffirmed the debtors' obligation, allowed the debtors to bring their payments current, and added $250 to the balance due to cover legal fees and costs. The debtors declined to execute the reaffirmation agreement.

On April 30, 1997, American National Bank filed this motion to modify the stay on the collateral. American National Bank requested that the debtors ultimately be required to turn the collateral over to the Bank so that it may foreclose on the property. The Bank presented two legal arguments in favor of the modification. First, it argued that the default and the debtors' refusal to reaffirm or redeem their obligation constituted cause for modification of the stay under 11 U.S.C. § 362(d)(1). Second, appellant argued that modification was required by 11 U.S.C. § 362(d)(2) because the debtors had no equity in the collateral.

Subsequent to the creditors' meeting and prior to the hearing on the Bank's motion to modify the stay, the debtors made payments to the Bank in amounts equal to their past due monthly payments. The debtors did not pay the $214.06 in late charges or the legal fees and costs associated with the collection of arrearages. Appellant did not waive its right to recover these late charges, legal fees, and costs.

The Bankruptcy Court heard oral argument on the motion to modify the stay on June 11, 1997. At the hearing, appellant's representative renewed the offer of the reaffirmation agreement which would have cured appellees' default. The debtors did not accept the offer. As of the hearing date, the debtors owed American National Bank $9,460.88, representing $9,246.82 in principal and interest balance and $214.06 in late charges. In addition to the $9,460.88, the Bank argues that the debtors also owed at least $2,365.22 for legal fees and costs associated with collecting arrearages.[2]

During the hearing, the debtors presented evidence that the collateral's fair market value was $3,500.00 for the car and $10,000.00 for the tractor. The Bank introduced evidence that the value cited by the debtors for the car likely was retail value. The Bank's witness then testified that following repossession and liquidation of the collateral, the vehicles would bring less than retail value.[3]

The Bankruptcy Court denied the Bank's motion to modify the stay on August 4, 1997. The Bankruptcy Court held that the debtors' failure to either redeem or reaffirm under § 521(2)(A) did not constitute "cause" under § 362(d)(1) and that the debtors had equity in the collateral under § 362(d)(2).

American National Bank filed this appeal of the Bankruptcy Court's decision. The debtors never filed a response brief, instead only filing a motion to dismiss the appeal. Appellant responded to the motion to dismiss.

## MOTION TO DISMISS

Appellees argue that this appeal should be dismissed as moot. Under Article III of the United States Constitution, I lack jurisdiction over a case if "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam) (internal quotations and citations omitted). A case would only be moot if I could not grant "any effectual relief" to the prevailing party. *Church of Scientology of California v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (citation omitted).

On June 30, 1997, the Bankruptcy Court discharged the debtors. The debtors contend that the automatic stay was lifted at that time pursuant to 11 U.S.C. § 362(c). They argue, therefore, that appellant's re-

2. This figure represents the $60.00 filing fee for the motion to modify the stay and the Bank's legal fees in the amount of 25% of the outstanding balance.

3. On re-direct examination, the witness stated that it was a "possibility" that the Bank would recover only 60% to 70% of the retail value of the vehicles, or a total of $9,450.00. On re-cross examination, the witness admitted that there was a "possibility" that the Bank might recover 90% of the retail value.

quested relief, modification of the automatic stay, is moot. While I agree with the debtors that the automatic stay has been lifted, I find that I am capable of granting American National Bank effectual relief.

First, I find that the automatic stay already has been terminated in this case. Section 362(c) states:

(1) the stay of an act against property of the estate ... continues until such property is no longer property of the estate; and

(2) the stay of any other act ... continues until the earliest of

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) ... the time a discharge is granted or denied.

11 U.S.C. § 362(c). Discharge is sufficient to extinguish the personal liability of the debtor. *In re Walker*, 151 B.R. 1006, 1008 (Bankr.E.D.Ark.1993). Discharge alone is insufficient to terminate a stay when the creditor seeks relief against the estate's property, however. *In re Boodrow*, 126 F.3d 43, 47 (2d Cir.1997), *cert. denied*, — U.S. —, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998); *In re Burke*, 147 B.R. 955, 957 (Bankr. W.D.Mo.1992).

In this case, American National Bank seeks relief against property, not the debtor. Thus, I must determine whether the property at issue is property of the estate governed by § 362(c)(1). "By filing a Chapter 7 petition, all property in which the debtor has a legal or equitable interest becomes part of the debtor's estate. 11 U.S.C. § 541. Thereafter, the property may drop out of the estate upon the occurrence of any one of a number of events. For example, should the debtor claim an exemption or the trustee abandon the property, that property will cease to be part of the estate." *In re Perry*,

29 B.R. 787, 793 (D.Md.1983), *aff'd*, 729 F.2d 982 (4th Cir.1984); *see also Collier on Bankruptcy*, ¶ 362.06 at 362–73 (Lawrence P. King. ed., 15th ed. rev.1996) (property is no longer part of the estate if "sold, abandoned, returned to the debtor as exempt property, or because a plan is confirmed").

When the debtors filed their Chapter 7 petition, the Nissan Stanza and the John Deere tractor passed into the estate pursuant to § 541. I find that the property at issue either has been exempted or abandoned by the estate and returned to the debtor, however. The record contains evidence of a claimed exemption on the 1987 Nissan Stanza. Transcript at 7. It is unclear whether the debtors also claimed an exemption for the John Deere tractor.[4] "[P]roperty claimed as exempt is exempted from the bankruptcy estate. Property exempted from the estate revests in the debtor." *In re Kretzer*, 48 B.R. 585, 587 (Bankr.D.Nev.1985) (citations omitted). Thus, to the extent an exemption was claimed in any of the collateral, the property fell out of the estate for purposes of § 362(c).

To the extent the property was not exempted, such property was automatically abandoned by the Trustee on May 7, 1997.[5] Automatic abandonment of property listed in the § 521 schedule occurs under 11 U.S.C. § 554(c) when a case is closed. *See Collier* ¶ 554.2[7] at 554–9 ("When there is no court order directing abandonment, the language of subsection (c) deems abandoned to the debtor *any* scheduled property of the estate that is unadministered at the close of the case.") (emphasis in original). Pursuant to 11 U.S.C. § 350, a Chapter 7 case is to be closed after the estate is fully administered and the trustee is discharged. *See Collier* ¶ 350.01 at 350–2 to 350–3 ("Section 350(a) requires the court to close a case after the

---

**4.** Counsel for the debtors stated that there was no exemption. Transcript at 7. The Trustee's Final Report, filed May 7, 1997, does not list the tractor as property of the estate, however. There also is no evidence that the Trustee abandoned the property at any time. Thus, it is unclear exactly what is the status of the tractor.

**5.** "Property of the estate may be abandoned in two ways. First, it may be formally abandoned

after notice and a hearing. Second, it may be abandoned by operation of law if it has been scheduled and not otherwise administered at the time the case is closed." *Stanley v. Sherwin-Williams Co.*, 156 B.R. 25, 26 (W.D.Va.1993) (citations omitted). There is no evidence that the property at issue in this case was formally abandoned.

estate is fully administered and the trustee is discharged.... Upon the closing of the case, all property that has been scheduled under section 521(1) and that has not been administered is abandoned to the debtor pursuant to section 554(c).").  Here, I find no order by the Bankruptcy Court directing that the Chapter 7 case be closed.  Nonetheless, under Rule 5009, "a presumption that the estate has been fully administered" arises when the Trustee has filed a "final report and final account and has certified that the estate has been fully administered." Fed. R.Bankr.P. 5009.  The Trustee filed such a final report on May 7, 1997.[6]  Absent evidence that a party in interest objected to this final report within 30 days, I will presume that the case has been fully administered, that the Trustee has been discharged, and therefore, that the case has been closed.[7]  Accordingly, any property listed on the § 521 schedule, including the car and the tractor, was abandoned by the Trustee to the debtor at that time.

Whether by means of abandonment or claimed exemption, the property at issue is no longer part of the estate.  Therefore, the termination of the automatic stay is governed by § 362(c)(2), as opposed to § 362(c)(1).  *Collier*, ¶ 362.06 at 362–72 ("Section 362(c) describes when the stay terminates in a bankruptcy case.  It provides that, unless relief is granted earlier by the court, a stay of an act against property of the estate expires when the property is no longer property of the estate, and other stays expire at the earlier of the time that (1) the case is closed, (2) the case is dismissed, or (3) the debtor receives a discharge.").  Pursuant to § 362(c)(2), the automatic stay was lifted upon the earlier of the closing of the case and the discharge.  Since the automatic stay has already been terminated by operation of § 362(c), I am incapable of granting the Bank's motion to modify the stay.  *See Dep't of Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1474 (4th Cir.1990) (recognizing that after provisions of § 362(c) have been met, "there can be no further application of the automatic stay....").

■  While I find that I am incapable of modifying the automatic stay in this case, I remain capable of providing American National Bank other "effectual relief."  The Bank "did not seek to lift the automatic stay as an end in itself."  *Boodrow*, 126 F.3d at 47.  Rather, the Bank ultimately seeks to recover the car and the tractor, or in the alternative, to bind the debtors to pay the late charges and attorneys' fees.  *See* Motion to Modify Stay at ¶ 10 (creditor requested "that the Debtors be required to turn over the property" and "such other relief as is just").  Underlying its request for modification pursuant to § 362(d)(1) is a claim that the Bankruptcy Court misapplied 11 U.S.C. § 521(2).  While the § 362 issue is moot, this § 521(2) issue remains ripe for disposition.  If I agree with the appellant that the Bankruptcy Court incorrectly applied § 521(2), I may compel the debtors to make an election

---

6. This final report was not included in the appellate record, but it was referenced on the docket sheet which was included in the record. I have reviewed the report and conclude that it is a final report under Rule 5009. Thus, I find that the present Chapter 7 case was closed. If the May 7, 1997 report did not have the effect of closing the Chapter 7 case, then the appeal certainly is not moot. If there were no final report under Rule 5009, then there is no evidence that the case was "closed." Thus, there would have been no automatic abandonment of the property. Absent an abandonment of the property, the property still belongs to the estate and the automatic stay could not have been lifted by a discharge.

7. In *Walker* and *Perry*, the respective courts summarized this analysis. *Walker*, 151 B.R. at 1008 ("Upon entry of the Trustee's Report of No Distribution, the trustee effectively abandoned any interest of the estate in the [property]. 11 U.S.C. § 554(c). Accordingly, the property, having been abandoned, the automatic stay is no longer in effect as to the [property]. 11 U.S.C. § 362(c)(1). Since the automatic stay is no longer in effect as to the property, ... the motion for relief from stay does not present a justiciable issue for the Court. [The creditor] is free to continue her litigation pending in state court, and was free to do so ... when the Report of No Distribution was filed with the Clerk."); *Perry*, 29 B.R. at 794 ("It is therefore apparent (1) that the stay remains in effect as long as the property remains in the debtor's estate; and (2) that upon abandonment by the trustee, the property leaves the estate and goes back to the debtor, in which case it is protected from a creditor action, absent circumstances justifying modification of the stay, until a discharge is either granted or denied in accordance with Section 362(c)(2)(C).").

under § 521(2). Such a result would constitute effectual relief for the appellant.

Therefore, I find that I am capable of rendering effectual relief in this case. Accordingly, the motion to dismiss is DENIED.

## THE MERITS OF THE APPEAL

### I. Issues

Having concluded that the automatic stay has been lifted and that the § 362(d) issues are, therefore, moot, the remaining issue on appeal is whether or not the Bankruptcy Court misapplied 11 U.S.C. § 521(2) by not requiring the defaulting debtors to either reaffirm or redeem their obligation in order to retain the secured property.[8]

### II. Standard of Review

■ The District Court, when reviewing a Bankruptcy Court's decision, "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R.Bankr.P. 8013. "[T]he Bankruptcy Court's factual determinations are subject to deference and shall not be set aside unless clearly erroneous, while its conclusions of law are subject to de novo review." *United States v. Easley*, 216 B.R. 543, 545 (W.D.Va.1997) (citing *In re Linkous*, 141 B.R. 890, 892 (W.D.Va.1992)).

### III. Discussion

■ Pursuant to § 362(a), a self-executing stay took effect upon the debtors' filing of their joint petition under Chapter 7 of the Bankruptcy Code. This stay operated against efforts by the Bank to enforce a lien against the car and the tractor. Section 362 also contains provisions allowing creditors to set aside the stay and commence collection efforts against the encumbered property. American National Bank sought to modify or terminate the automatic stay in this case pursuant to § 362(d). Section 362(d) provides, in pertinent part, as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d). American National Bank sought to modify the stay under either subsection (1) or subsection (2).

Section 362(d)(1) permits modification of the automatic stay "for cause." [9] The Bank argued that the combination of the debtors' default and their refusal to reaffirm or redeem their obligation under § 521(2) constituted cause. The Bankruptcy Court relied on *In re Belanger*, 962 F.2d 345 (4th Cir. 1992), for the proposition that, under 11 U.S.C. § 521(2), the "debtors may retain property serving as loan collateral and continue making payments in accordance with the loan agreement without being required to redeem or reaffirm the underlying debt." *In re DeJournette*, 97–00832, slip op. at 2 (August 4, 1997). The Bankruptcy Court concluded, therefore, that the default and failure to reaffirm did not constitute sufficient "cause" for modification under § 362(d)(1).

As discussed above, whether or not there is cause to modify the stay is a moot issue since the stay already has been terminated in this case. What remains a valid issue for adjudication on appeal, however, is whether the Bankruptcy Court was correct in determining that the debtors did not have to

---

**8.** Neither party addressed this issue as the ultimate issue on appeal. The Bank's Appellate Brief substantially discussed the § 521(2) issue as the principal "cause" justifying modification of the automatic stay under § 362(d)(1). Thus, the debtors were on notice that the issue was central to the appeal. The debtors waived any objection to my reliance on that issue as the sole

grounds for reversing the Bankruptcy Court by failing to file a response brief.

**9.** Since the § 362 issue is moot and because subsection (2) does not involve the § 521(2) issue, I will not discuss § 362(d)(2) further.

either redeem or reaffirm their obligation under § 521(2) if they sought to retain the collateral. Because I find that the Bankruptcy Court erred in ruling that the debtors did not either have to redeem or reaffirm, I reverse the decision of the Bankruptcy Court.

## A. Compliance with § 521

Section 521(2)(A) states that:

the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property.

The circuits are split on whether a non-defaulting debtor must reaffirm or redeem his obligation when he seeks to retain the secured collateral, or whether following a Chapter 7 filing, a non-defaulting debtor may simply hold on to the collateral securing the loan and continue making payments under the original loan agreement. The Second, Fourth, Tenth, and Ninth circuits have held that debtors who are current on their loan payments on secured property may elect to retain the property and make the payments specified in the contracts with the creditor. *Boodrow*, 126 F.3d at 53 ("After considering the text of § 521(2), its legislative history and the policies informing the Bankruptcy Code, we hold that § 521(2) does not prevent a bankruptcy court from allowing a debtor *who is current on loan obligations* to retain the collateral and keep making payments under the original loan agreement.") (emphasis added);[10] *Belanger*, 962 F.2d at 347 ("if applicable" in text of § 521(2) means there are other options available to non-defaulting debtors); *Lowry Fed. Credit Union v. West*, 882 F.2d 1543, 1547 (10th Cir.1989) (the options listed

in § 521(2) are exclusive, but a failure to comply with § 521(2) does not give rise to an automatic right for creditor to repossess collateral where debtor is not otherwise in default); *In re Parker*, 139 F.3d 668, 671–73 (9th Cir.1998) (debtor not limited to reaffirmation or redemption). The Fifth, Eleventh, and Seventh circuits disagree, holding that once the debtor decides to retain rather than surrender the property, he is restricted to the "applicable" options of § 521. *Matter of Johnson*, 89 F.3d 249, 252 (5th Cir.1996) (debtors limited to options set forth in § 521(2)) (per curiam); *In re Taylor*, 3 F.3d 1512, 1516 (11th Cir.1993) ("Section 521 mandates that a debtor who intends to retain secured property must specify an intention to redeem or reaffirm."); *Matter of Edwards*, 901 F.2d 1383, 1386–87 (7th Cir.1990) ("Permitting a debtor to retain property while keeping up installment payments without a reaffirmation of personal liability allows a debtor to force a new arrangement on a creditor.").

As noted, the Bankruptcy Court held that *Belanger* controlled the instant case. Slip op. at 2. In so holding, the Bankruptcy Court made a factual finding that the debtors "were current in their monthly payments." *Id.* If the Bankruptcy Court's statement indicates a finding of fact that the debtors were not in default, such a conclusion is clearly erroneous. While the debtors had resumed paying monthly payments and had made up for the previous missed payments, the debtors remained in default as to their obligation under the Note and Security Agreement. When the debtors were late with their monthly installments, late charges accrued. These charges have not been paid by the debtors. Additionally, the Note and Security Agreement required the debtors to pay attorneys' fees associated with collecting any default. These charges also have not

---

**10.** The Second Circuit refers to this option as "reinstatement." Reinstatement is "the debtor's right to retain the collateral by continuing regular payments under the security agreement and thereby completing the contract, albeit a somewhat different contract because any personal obligation has been discharged. To qualify for reinstatement, debtors cannot be in default, except for technical defaults such as bankruptcy clause defaults, and must pay the entire debt in accor-

dance with the contract. This right is called reinstatement because it prevents foreclosure and reinstates the contract. Reinstatement allows debtors to continue with business as if bankruptcy had no effect on the secured creditor's position." *Boodrow*, 126 F.3d at 49 n. 6 (quoting Joann Henderson, *The Gaglia–Lowry Brief: A Quantum Leap from Strip Down to Chapter 7*, 8 Bankr.Dev.J. 131, 137 (1991)).

been paid by the debtors. Thus, while the debtors have resumed making their monthly payments, it is unquestionable that the debtors remain in default on their obligation.

Clearly, there is a factual distinction between *Belanger* and the instant case. American National Bank contends that this distinction is sufficient to remove the instant case from the purview of *Belanger*. The Bank argues that because of the default in this case the debtors must either reaffirm their obligation or redeem the debt in order to retain the collateral under § 521(2).[11] I agree with American National Bank that the holding in *Belanger* is not directly applicable to the instant case. *See Boodrow,* 126 F.3d at 48 (recognizing that *Belanger* applies to debtors who are "current on a loan."); *Johnson,* 89 F.3d at 251 ("The Fourth Circuit has determined that the three options set forth in Section 521(2) do not prevent the further alternative of retaining the property and *remaining current on the debt.*") (emphasis added); *In re Doss,* 203 B.R. 57, 60 (Bankr. W.D.Va.1996) (recognizing that *Belanger* may be factually distinguished from case involving defaulting debtor).

Having concluded that *Belanger* is not directly controlling of the instant case, I must determine whether debtors who defaulted prior to filing their bankruptcy petition must either redeem the underlying debt or reaffirm their obligation in order to retain the secured property. Where debtors have defaulted on a secured debt prior to filing his bankruptcy petition, I conclude that they must reaffirm their obligation or redeem the underlying debt in order to retain the secured property. I reach this conclusion following an examination of the statutory lan-guage at issue, *Belanger,* and other relevant case law.

### i) Statutory Interpretation

The starting point for a case involving the construction of a statute is with the language of the statute. *Boodrow,* 126 F.3d at 49 (citing *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)). In this case, the language of the statute is not dispositive. The language of § 521(2)(A) and (B) is less than helpful. Those sections have been found to be both certain and vague; they have been found to be restrictive and broad. I can glean no more from those passages than the judges who have gone before me. I do, however, find some help in the text of subsection (C).

The courts holding that non-defaulting debtors need not choose one of the alternatives enumerated in § 521(2) often cite the language of subsection (C). *See, e.g., Belanger,* 962 F.2d at 347; *Parker,* 139 F.3d at 673; *In re Mayton,* 208 B.R. 61, 66–67 (9th Cir. BAP 1997). Subsection (C) states: "nothing in subparagraphs (A) and (B) of this paragraph shall alter · the debtor's or the trustee's rights with regard to such property under this title." These courts reason that forcing non-defaulting debtors to redeem or reaffirm when they enter bankruptcy violates subsection (C) by altering the debtors' rights to continue making payments under the original loan agreement.

I find this reasoning equally applicable in this case. Subsection (C) does not permit altering the debtors' rights to their benefit, just as it does not permit altering their rights to their detriment. To permit the defaulting debtors to retain the property

---

11. Since the debtors have failed to either redeem or reaffirm, the Bank concludes that cause has been shown to modify the automatic stay. As discussed above, however, I am addressing the § 521 issue on its own merits and not in support of a claim for modification under § 362(d)(1). In any event, it is unclear whether a violation of § 521(2) would necessarily constitute cause for modification under § 362(d)(1). *See Boodrow,* 126 F.3d at 48 ("It is not clear to us that violation of § 521(2) would automatically require a bankruptcy court to lift the automatic stay."); *Lowry,* 882 F.2d at 1546 (holding that noncompliance with § 521(2) did not warrant relief from the automatic stay so that the creditor could repossess the collateral); *but see Johnson,* 89 F.3d at 252 ("If the payments are in default, ... [the creditor] can always move to lift the stay in order to foreclose."); *In re Weir,* 173 B.R. 682, 690 (Bankr.E.D.Cal.1994) ("Violation of section 521(2) serves as a prima facie basis for a finding of cause for relief from stay."); *In re Irvine,* 192 B.R. 920, 921 (Bankr.N.D.Ill.1996) ("The most logical and legally sensible answer to this question is that the Debtors' failure to perform the duties imposed within Section 521(2) provides grounds for vacating the automatic stay....").

during the pendency of the bankruptcy proceedings without electing from the § 521(2) options would bestow upon the debtors additional rights. Accordingly, I find that the text of subsection (C) favors requiring debtors not current on their secured obligations to make an election under § 521(2).

### ii) *Belanger*

*Belanger* also supports my conclusion. First, the *Belanger* court cited with approval an Eastern District of Virginia case in which the court held that "a debtor who was not in default" on a loan was entitled to retain the collateral as long as he remained current on the loan payments. *Belanger*, 962 F.2d at 347 (citing *In re Ballance*, 33 B.R. 89 (Bankr. E.D.Va.1983)); *see also Boodrow*, 126 F.3d at 50. A reading of *Ballance* reveals a clear distinction between debtors who have defaulted and those who have not. 33 B.R. at 91 ("[T]he prevailing, majority view in the country is that a debtor not in default should not have to surrender his property in a foreclosure. That he is current says something. A creditor has a remedy should default occur in the future.").

The *Belanger* court then interpreted *Riggs Nat'l Bank of Washington, D.C. v. Perry*, 729 F.2d 982 (4th Cir.1984), as standing for the proposition that a "debtor, during the bankruptcy proceedings, [may] retain the collateral by making the installment payments if he otherwise avoided default." 962 F.2d at 348. This statement presents the negative implication that if the debtor had been in default when the petition was filed or fell into default after the filing of the petition, he could not have retained the property merely by resuming payments under the original loan agreement. Rather, it is apparent that retention of the collateral would require more from the defaulting debtor, such as reaffirmation under § 524(c) or redemption under § 722.

Finally, the court stated that "[i]f the debtor defaults by, for example, omitting payment, allowing insurance to lapse, or failing to maintain the collateral properly, the creditor can repossess the collateral and sell it."

*Id.* at 349. I view this statement as strong evidence that the court would treat a defaulting debtor differently than a non-defaulting debtor. I interpret the court as saying that where a debtor defaults after filing for bankruptcy, the creditor's right to step in and repossess the collateral trumps any right of the debtor to retain the property under the terms of the original contract.[12] While the court is discussing postpetition default here, the statement is equally applicable to prepetition default. Thus, where the debtor has defaulted prior to filing for bankruptcy, the creditor's right to step in and repossess the collateral trumps any right of the debtor to "reinstate" the payment terms of the original loan agreement. The only way for the debtor to retain the property then is to step outside the provisions of the original loan agreement and utilize redemption under § 722 or reaffirmation under § 524(c). To give effect to the rights of the creditor to intervene, a court must require a debtor who defaulted prior to filing his petition and seeks to retain the secured property to redeem or reaffirm. Otherwise, the creditor will be denied his right to repossess under the original contract.

Accordingly, I read *Belanger* as requiring different treatment for debtors who have defaulted on a secured debt from those who have not defaulted. Where debtors have defaulted, I find that the *Belanger* court would require the debtor to choose among the options enumerated in § 521(2).

### iii) Other Relevant Case Law

The present issue apparently is not as frequently litigated as the situation where debtors have not defaulted prior to filing their bankruptcy petitions. Nonetheless, there is substantial persuasive precedent supporting my conclusion.

First, of the aforementioned circuit opinions on the § 521(2) issue, only one, *Matter of Johnson*, 89 F.3d 249 (5th Cir.1996), involved a debtor who had defaulted prior to filing his petition. While the *Johnson* court's

---

**12.** This seems rather obvious. If you permit the debtor to retain the property under the original payment terms of the contract, then you certainly must permit the creditor to retain his rights upon any default by the debtor.

holding applies to all debtors, whether or not defaulted, it is insightful as the only circuit court opinion involving a debtor who defaulted prior to filing his petition.

Second, the *Boodrow* court expressed its opinion that defaulting and non-defaulting debtors should be subject to different treatment. The court first stated that the option selected by the debtor in *Boodrow,* "reinstatement," would not be available to a debtor who had defaulted prior to filing his petition. 126 F.3d at 49 n. 6. The court also stated that "a debtor in default on a loan" might be subject to differing treatment. *Id.* at 52–53. Finally, the court cited favorably a case which is on point with the case at bar, *In re Bushey,* 204 B.R. 661 (Bankr.N.D.N.Y. 1997). *Id.* at 53. In *Bushey,* a New York Bankruptcy Court held that debtors who are not current on secured obligations have an affirmative duty to take action:

> This court holds that a debtor not current, and I emphasize not current, on secured obligations has an affirmative duty to do something. Possible menu choices for a noncurrent debtor include:
>
> 1) Challenge the underlying lien of the secured creditor pursuant to 11 U.S.C. § 522(f) or section 506(d);
>
> 2) Challenge the secured status of the creditor via an applicable objection to claim or raise the issue as an affirmative defense;
>
> 3) Attempt to reaffirm the debt pursuant to 11 U.S.C. § 524(c);
>
> 4) Redeem the collateral pursuant to 11 U.S.C. § 722; or
>
> 5) Surrender the collateral pursuant to 11 U.S.C. 521(2)(A).

204 B.R. at 663.

Finally, in *In re Dever,* 164 B.R. 132 (Bankr.C.D.Cal.1994), the Bankruptcy Court addressed the § 521(2) issue. The court stated that "[t]he issue has primarily been litigated where the debtor is not otherwise in default under the terms of the installment contract. As with so many issues of interpretation of the Bankruptcy Code, the courts disagree about the meaning of Section 521(2). One line of cases holds that, if the debtor does not reaffirm or redeem the property, it must be surrendered to the secured creditor. The contrary authorities hold that a debtor who is not otherwise in default may keep collateral and continue to perform under the installment contract without reaffirming or redeeming. A debtor in default at the time of the bankruptcy, however, must choose and perform one of these two options...." *Id.* at 136 n. 2.

One bankruptcy court in this district disagrees with my conclusion and has extended the holding of *Belanger* to a situation involving a defaulting debtor. In *In re Doss,* 203 B.R. 57 (Bankr.W.D.Va.1996), the Bankruptcy Court held that a defaulting debtor may choose options other than those enumerated in § 521(2) and that the creditor's only option is to proceed in state court after the automatic stay has been terminated. I will not attempt to distinguish these two cases; I simply disagree with that conclusion. I think such a resolution is too harsh for the creditor. Where a debtor is non-defaulting, the creditor does not lose anything by allowing the debtor to "reinstate" the original contract: the debtor will continue to make payments under the original loan agreement. Where a debtor has already defaulted before filing his petition, the creditor stands to lose the arrearages as the collateral depreciates, unless the debtor surrenders the property, reaffirms his obligation, or redeems the debt. I find therefore, that in the situation where the debtor has defaulted on a secured debt prior to filing for bankruptcy, the most efficient and fair remedy is to require the debtor either to surrender the collateral or, if he desires to retain the collateral, redeem or reaffirm the obligation. Therefore, despite the ruling in *Doss,* I find that other relevant case law supports my conclusion.

For the aforementioned reason, I believe that the debtors violated § 521(2) by not electing to redeem or reaffirm and that the Bankruptcy Court erred by not compelling them to do so. I must now determine the appropriate remedy for this error.

**B. Remedy**

■ If the non-current debtor does not affirmatively do something, what is the

appropriate penalty? Possible penance includes:

   1) Compel the debtor to perform pursuant to 11 U.S.C. § 105;

   2) Dismiss the case pursuant to 11 U.S.C. § 707(a);

   3) Modify the stay pursuant to 11 U.S.C. § 362;

   4) Render the debt nondischargeable pursuant to 11 U.S.C. § 523(a); and/or

   5) Award costs and/or attorney fees to the pursuing creditor.

*Bushey*, 204 B.R. at 663–64. There is widespread opinion as to the proper remedy in this situation. Some courts have held that modification of the stay is the appropriate remedy. *See id.* at 664. Others have gone as far as dismissing the case for failure to comply with § 521(2). *See In re Green*, 119 B.R. 72 (Bankr.D.Md.1990). The proper resolution seems to be a matter of discretion based on the facts of a given case.

■■■■ In general, the preferred remedy is modification of the automatic stay to permit the creditor to pursue his state law remedies. Obviously, that option is not available in this case.[13] I find that the appropriate relief in this case is to compel the debtors to either surrender the collateral or, if they choose to retain the collateral, compel them to either redeem the debt or reaffirm their obligation. *See Johnson*, 89 F.3d at 252 (compelling debtor to comply with § 521(2)); *Taylor*, 3 F.3d at 1513–17 (same). I reach this conclusion here for several reasons.

First, requiring the creditor to proceed in state court will lead to unnecessary delay in this case. The Bank has a clear right to possession of the collateral absent reaffirmation or redemption. I find that it would be unfair to require the creditor to turn to state court because that would result in additional unnecessary expense, the waste of state court resources, and additional loss to the Bank as the value of the collateral continues to depreciate. *See In re Stewart*, 3 B.R. 24, 25–26 (Bankr.N.D.Ohio 1980) ("[T]he time value of money is a matter appropriate for judicial concern within the context of a redemption and one which weighs heavily against the debtors position.")

Second, the precarious condition of the creditor is worsened by the debtors' minimal equity cushion in the collateral. The debtor owes American National Bank nearly $12,000.00 in principal, interest, late fees, and attorneys' fees. The highest possible value for the collateral is a combined $13,500.00, but the property is unlikely to bring in that much in a liquidation sale. Given the costs of cleaning and repairing the property, advertising the liquidation sale, and conducting the sale along with the likelihood that the property will not earn more than 90% of retail value at a liquidation sale, the debtors have little, if any, equity in the collateral. Thus, the creditor's position is worsened daily as the property continues to depreciate.

Third, I am troubled by the debtors' constant refusal to reaffirm under the very generous terms offered by American National Bank. Because of the debtors' intransigence on this issue, I am further inclined to compel compliance with § 521(2) at this stage rather than require the creditor to resort to state law remedies. *See Bushey*, 204 B.R. at 664 (considering the debtors' conduct in determining appropriate remedy under § 521).

For the aforementioned reasons, I find that the appropriate remedy for the debtors' failure to comply with § 521(2) is to compel such compliance.

**CONCLUSION**

For the foregoing reasons, the debtors' motion to dismiss is DENIED, the decision of the United States Bankruptcy Court is REVERSED, and this matter is REMANDED to the Bankruptcy Court for proceedings consistent with this opinion. The debtors are ordered to file a new Statement of Intent with the Bankruptcy Court within twenty days of the entry of this Order. In the revised Statement of Intent, the debtors are ordered to state an intention either to surrender or retain the secured property. If they choose to retain the property, the debt-

---

**13.** Even if modification were available here. I think the facts, as discussed below, warrant more immediate relief for the creditor.

98

ors are ordered to state an intention either to redeem the debt pursuant to 11 U.S.C. § 722 or reaffirm their obligation pursuant to 11 U.S.C. § 524(c). The debtors are ordered to carry out their stated intention within forty-five days of the filing of the revised Statement of Intent.