**In re John HARRIS and Genia Harris, Debtors.**

**Bankruptcy No. 98–12393–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

Aug. 28, 1998.

Chip Trimmier, Boynton Beach, FL, for Tropical Federal Credit Union.

Robert C. Meyer, Coral Gables, FL, for Debtors.

Deborah Menotte, West Palm Beach, FL, Trustee.

## ORDER GRANTING CREDIT UNION'S MOTION TO DISMISS

A. JAY CRISTOL, Chief Judge.

Upon notice and a hearing on August 12th, 1998, this Court considered a Motion to Dismiss this bankruptcy case filed pursuant to 11 U.S.C. § 707(a) by secured creditor Tropical Federal Credit Union. The Court heard argument from counsel for the Credit Union and counsel for the Debtors, and the Court finds as follows:

### Factual Findings

The Debtors do not dispute that they are properly indebted to Tropical Federal Credit Union and that a 1995 Mazda 626 secures this indebtedness. The Debtors filed their bankruptcy petition under chapter 7 on March 25th, 1998. The Debtors' Statement of Intention was filed on April 15th, 1998. In that court paper, the Debtors declare their intention to retain the vehicle by reaffirming the indebtedness to Tropical Federal Credit Union.

The Credit Union, through legal counsel, tendered a reaffirmation agreement to counsel for the Debtors. As of the time of the hearing, the Debtors had not executed or filed any reaffirmation agreement with Tropical Federal Credit Union, nor had the Debtors tendered possession of the vehicle, nor had the Debtors tendered a redemption payment to the Credit Union. Counsel for the Debtors advised the Court that the Debtors found the arrearage owed to the Credit Union too great to make a reaffirmation agreement financially feasible. However, the Debtors neither amended their statement of intention to reflect a changed intention nor tendered performance of an alternative intention pursuant to 11 U.S.C. § 521.

### Conclusions of Law

The principal controlling decision relevant to this case is *In re Taylor,* 3 F.3d 1512 (11th Cir.1993). The *Taylor* case holds, in relevant part:

The plain language of section 521(2)(B), which requires a debtor, within forty-five days of the filing of the statement of intention, to "perform his intention with respect to such property...," indicates that the debtor must perform some act with respect to the property within a specified period of time. An option to retain and keep current is not an act capable of performance within forty-five days. This option provides that the debtor's performance not be concluded until the expiration of the contract, a period of time ordinarily beyond the forty-five day limit. Additionally, retention is not a duty that the debtor needs to "perform," as the debtor already has possession of the property.

\*　　\*　　\*　　\*　　\*　　\*

We recognize that Congress intended the bankruptcy laws to provide a debtor a "fresh start" by allowing a debtor to discharge all dischargeable debts while retaining assets that are exempt. [citation omitted] Allowing a debtor to retain property without reaffirming or redeeming gives the debtor not a "fresh start" but a "head start" since the debtor effectively converts his secured obligation from recourse to nonrecourse with no downside risk for failing to maintain or insure the lender's collateral.

*Id.* at 1516. In the case currently before this Court, the Debtor filed a Statement of Intention indicating that they would reaffirm the debt owed to the Credit Union. However, the Debtors have refused to perform their stated intention, or to amend their statement of intention to reflect a different intent, or to perform another of the alternatives given in 11 U.S.C. § 521.

The Debtors have argued that a motion to dismiss is improper because the Credit Union lacks standing to make the motion. The Debtors have confused 11 U.S.C. § 707(a), which is open to any movant, with 11 U.S.C. § 707(b), which is limited to motions by the United States Trustee or the Court itself. This Motion is not a motion to dismiss for "substantial abuse." This Motion is a motion to dismiss for the Debtors' failure to perform the duties prerequisite to being granted relief pursuant to the Bankruptcy Code.

The Motion represents a new approach to an old problem frequently faced by secured creditors. While 11 U.S.C. § 521 requires debtors within 45 days of filing a statement of intention to reaffirm secured debt, surrender the collateral to the creditor, or redeem the collateral, debtors seldom perform their intention within the statutory period. The standard approach to this problem within the Southern District of Florida has been to file a motion to compel compliance with 11 U.S.C. § 521. The Court notes that there is no specific provision contained in the Bankruptcy Code that suggests that a motion to compel compliance is a potential remedy at all, except as through the general discretion granted this Court in 11 U.S.C. § 105(a). The only recourse that the Bankruptcy Code seems to specifically suggest addressing this problem is a dismissal for cause pursuant to 11 U.S.C. § 707(a).

Numerous bankruptcy cases around the country and even the historical and revision notes to section 707(a) itself acknowledge that the causes for dismissal listed within § 707(a) are not exhaustive, but merely illustrative. *See, e.g., In re Moses,* 171 B.R. 789 (Bkrtcy.E.D.Mich.1994). However, the instant Motion to Dismiss falls within the ambit of § 707(a)(1) as an "unreasonable delay that is prejudicial to creditors."

If the Credit Union brings a motion to compel and the motion is granted, the debtor has lost absolutely nothing. The granting of a motion to compel is the equivalent of granting the debtor an unreasonably long extension of the period that is already established by Congress within which the debtor must perform that duty owed to secured creditors. In fact, by definition, the Debtors cannot comply with 11 U.S.C. § 521 if 45 days have passed from the filing of the statement of intention. Denying creditors the availability of a remedy that has any adverse consequences for the debtor provides a breeding ground for contemptuous refusal to perform the duties required by the Bankruptcy Code.

The standard practice of filing a motion to compel wastes creditor's money on unnecessary attorney's fees and fails to penalize the Debtor for wanton failure to comply with the

Debtor's duties. It is poor public policy to force creditors, already feeling the burden of the record number of consumer bankruptcies, to spend legal fees to force debtors to do what the Code already requires. The threat of a motion to compel compliance with section 521 is no threat at all. Debtors are free to scoff at their duty to secured creditors imposed by the Bankruptcy Code unless creditors have some other recourse.

The necessity for a different approach is illustrated by the following example. A debtor might state an intention to reaffirm but fail to sign a reaffirmation agreement, perhaps even making subsequent oral promises to deliver a signed agreement. In defense of its rights, the creditor may file a motion to compel. However, before a hearing on the motion to compel, a discharge might be entered by the court in the ordinary course of the case. The effect of the discharge is to prevent the debtor from entering into a valid reaffirmation agreement due to the operation of section 524(c)(1) of the Bankruptcy Code. Therefore, the creditor would be forced to make a choice between two evils forced upon it by the debtor's dilatory behavior. On the one hand, the creditor might accept payments although the debt has been discharged, allowing the debtor to retain possession of the collateral without the debtor's being required to pay the balance if the collateral is stolen or destroyed. The debtor therefore is able to convert the secured loan to a nonrecourse loan, the specific result that the *Taylor* case sought to avoid. On the other hand, the creditor might repossess the collateral. However, while the collateral might be valuable to the debtor, often the collateral has an immediate liquidation value far less than the amount owed. Moreover, the collateral depreciates during the time that the debtor retains the collateral in excess of the statutory time period for performance. Furthermore, the secured creditor incurs additional out-of-pocket costs of repossession if the debtor does not perform the affirmative duty of surrendering the collateral at a time and place mutually convenient for the debtor and the creditor. The prejudice to the secured creditor caused by the unreasonable delay in performing a stated intention is therefore clear to this Court.

The *Taylor* case indicates that the Bankruptcy Code should not be twisted to give debtors a "head start" rather than a fresh start. Limiting creditors to the remedy of merely asking the court to require debtors to perform duties that the Bankruptcy Code already requires when faced with a debtor that flagrantly refuses to perform the duty owed to a secured creditor would give debtors another such "head start."

■ It appears that there is no reported case that is squarely on point with the facts presented in the case at bar. However, the case of *In re Steinmetz*, 85 B.R. 633 (Bkrtcy. S.D.Fla.1988), appears to be sufficiently analogous as to provide some guidance. In *Steinmetz*, the corporate debtor failed to appear at the first meeting of creditors except as represented by counsel. The Court granted the creditor's motion to dismiss because "[t]he Debtor's attendance and availability for examination under oath at the meeting of Creditors is mandatory." *Id.* In *Taylor*, the 11th Circuit Court of Appeals has interpreted section 521 of the Bankruptcy Code to mean that the Debtor's performance of the stated intention is mandatory. Therefore, the Credit Union's Motion to Dismiss should be granted under the same reasoning used in the *Steinmetz* decision.

### Order for Relief

In this case, the Debtors have not properly complied with the conditions precedent to become eligible for a discharge under the Bankruptcy Code. The Debtors have failed to perform their stated intention, which is a mandatory duty owed to secured creditor Tropical Federal Credit Union pursuant to section 521 of the Bankruptcy Code as interpreted by the 11th Circuit Court of Appeals. Therefore, the Credit Union's Motion to Dismiss is hereby GRANTED and the case is DISMISSED with prejudice for cause pursuant to 11 U.S.C. § 707(a). The Debtors may not file another petition for relief in this Court for a period of 180 days from the date of this Order.