**In re Martin Allison WATERS and Terrie Brock Waters, Debtors.**

**Bankruptcy No. 00–04305–8W7.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 23, 2000.

David Hicks, Feinberg, Isaak & Smith/ Debt Relief, Tampa, FL, for Martin Allison Waters and Terrie Brock Waters.

David Schrader, Kass, Shuler, Solomon, Spector, Foyle & Singer, P.A., Tampa, FL, for Secured Creditor.

Andrea P. Bauman, Highland City, FL, Chapter 7 trustee.

### MEMORANDUM DECISION AND OR-DER ON SECURED CREDITOR'S MOTION TO COMPEL DEBTOR TO REAFFIRM, REDEEM OR SURRENDER

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

This case came before the court at a hearing on motions ("Motions") to compel the debtors, Martin Allison Waters and Terrie Brock Waters ("Debtors"), to reaffirm debts ("Debt") owed to Suncoast Schools Federal Credit Union ("Secured Creditor"), redeem the two automobiles that are the collateral for the Debt ("Collateral") or surrender the Collateral.

For the reasons set forth below, the Court grants the Motions and requires the Debtors to strictly comply with the requirements of Bankruptcy Code § 521(2)(A) by either: (1) reaffirming the Debt or (2) redeeming the Collateral or (3) surrendering it.

### FACTUAL FINDINGS

On March 22, 2000, the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Debtors filed their schedules with their petition. Included with their schedules was the statement of intentions ("Statement of Intentions") required by Bankruptcy Code § 521. Listed on their Statement of Intentions were three items that they intended to surrender and six items, including the Collateral, that they intended to retain. The "Method of Retention" was stated as "Other," without explanation.

At the hearing, counsel for the Debtors informed the Court that "Other" meant retaining the Collateral by continuing to the make the payments to the Secured Creditor in the amounts called for in the relevant loan documents ("Loan Documents"). However, the Debtors were not willing to actually reaffirm the Debt. In this regard, counsel for the Debtors explained that reaffirmation of the Debt would require counsel to make a declaration under Bankruptcy Code § 524(c)(3)(B) that the agreement to reaffirm does not impose an undue hardship on the Debtors and he was not willing to make such a declaration.

Counsel indicated that the reason that he would not make such a statement or negotiate a reaffirmation agreement on their behalf was because of the relatively high monthly payments called for under the Loan Documents. Counsel was also of the view that if the Debtors nevertheless negotiated a reaffirmation agreement on their own behalf, the court would not be able to make the findings required by Bankruptcy Code § 524(c)(6) [1].

### CONCLUSIONS OF LAW

#### A. The Debtors' Duties in Chapter 7.

Bankruptcy Code § 521 sets forth the duties of a debtor who seeks the benefit of a discharge under Chapter 7. This provision mandates that an individual debtor "shall file ... a statement of his intention with respect to the retention or surrender" of property securing a consumer debt specifying, if such property is claimed as exempt and the debtor intends to retain it, whether the debtor will redeem the property under Bankruptcy Code § 722 or reaffirm the debt under Bankruptcy Code § 524(c).

#### B. "Other" Is Not An Option.

Bankruptcy Code § 521(2) does not contain the "Other" option advanced by the Debtors in this case. That is, it clearly does not provide the right to retain the collateral by continuing to make the monthly payments without reaffirming the underlying debt as an alternative. In ef-

---

**1.** This provision requires a court to find that the agreement would not impose an undue hardship on the Debtors and that it was in their best interest.

fect, the Debtors want to turn a recourse obligation into a nonrecourse obligation. The Debtors would benefit by continuing to use the Collateral until such time as they changed their minds or determined the Collateral was no longer worthwhile. They then could abandon the Collateral with impunity for any deterioration or damage to the Collateral which occurs during the period of their use.

While this result is appealing from a debtor's perspective, it is the very result that the Eleventh Circuit has explicitly rejected in its holding in *Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512, 1516 (11th Cir.1993) (*"Taylor"*)[2]. In *Taylor*, the debtors attempted to achieve the same result as the Debtors in this case. At the first meeting of creditors, they stated their intent to retain the collateral, remain current and not reaffirm the debt. *Id.* at 1514. The secured creditor filed a motion to compel the debtors to comply with Bankruptcy Code § 521 to specify their intention to redeem or reaffirm. *Id.*

### C. *Fresh Start Not Head Start.*

The Eleventh Circuit rejected the very same argument espoused by the Debtors, noting that when a debtor is relieved of personal liability on loans secured by collateral, "the debtor has little or no incentive to insure or maintain the property in which a creditor retains a security interest." *Taylor*, 3 F.3d at 1515 (quoting from *In re Edwards*, 901 F.2d 1383 (7th Cir. 1990)). As stated in *Taylor*:

Allowing a debtor to retain property without reaffirming or redeeming gives the debtor not a "fresh start" but a "head start" since the debtor effectively converts his secured obligation from recourse to nonrecourse with no downside risk for failing to maintain or insure the lender's collateral.

*Id.* at 1516. *See also In re French*, 185 B.R. 910 (Bankr.M.D.Fla.1995) (requirements of *Taylor* met where debtor is willing to reaffirm the terms of the original agreement but disputes secured creditor's right to fees); *In re Harris*, 226 B.R. 924 (Bankr.S.D.Fla.1998) (dismissal of case is appropriate remedy for failure of debtor to timely perform duties imposed by Bankruptcy Code § 521); *In re Greer*, 189 B.R. 219 (Bankr.M.D.Fla.1995) (must reaffirm any other obligations that are cross-collateralized by vehicle).

### D. *Approval of the Reaffirmation Agreement.*

The key argument advanced by the Debtors as to why they should be allowed to choose the "Other" option is that a reaffirmation agreement would impose an undue hardship on them and would not be in their best interest. This argument is unpersuasive for several reasons.

First, Bankruptcy Code § 521 is clear in its mandate on what is required from debtors in circumstances such as these. If there were any ambiguity or room for creative interpretation of these requirements, *Taylor* makes clear how this section is to be applied. The "Other" option

---

**2.** There is currently an even split among the circuits over what a debtor must do to keep collateral. Along with the Eleventh Circuit, three other circuits, the First, Fifth and Seventh, hold that a debtor may not retain collateral without reaffirmation or redemption. *See Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843 (1st Cir.1998); *Johnson v. Sun. Fin. Co. (In re Johnson)*, 89 F.3d 249 (5th Cir.1996); *In re Edwards*, 901 F.2d 1383 (7th Cir.1990). The Second, Fourth, Ninth and Tenth Circuits have expressed their willingness to allow the "Other" option argued by the Debtors in this case and retain collateral without either reaffirmation or redemption. *See Capital Communications Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43 (2d Cir.1997), *cert. denied* 522 U.S. 1117, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998); *Home Owners' Funding Corp. of Am. v. Belanger (In re Belanger)*, 962 F.2d 345 (4th Cir.1992); *McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668 (9th Cir.1998), *cert. denied*, 525 U.S. 1041, 119 S.Ct. 592, 142 L.Ed.2d 535 (1998); *Lowry Fed. Credit Union v. West (In re West)*, 882 F.2d 1543 (10th Cir.1989).

simply is not an option under this statute and the Eleventh Circuit precedent interpreting it.[3]

Second, if a reaffirmation agreement is not in the Debtors' best interest because of the large disparity between the value of the Collateral and the amount of the Debt being assumed or because they cannot afford the payments [4], the Debtors have other options. They can surrender the vehicles or they can redeem the vehicles by paying only the amount of the secured claim, that is, the value of the Collateral as may be determined by the court.

Finally, the question of whether a reaffirmation agreement would be approved is not before the court at this time. Assuming the Debtors decide to pursue this option the Court will consider it on the merits on notice to affected parties.

### Conclusion

■ Based on the foregoing, it is appropriate to require the Debtors to comply with Bankruptcy Code § 521 by choosing among the options of redemption under Bankruptcy Code § 722 or reaffirmation under Bankruptcy Code § 524(c) or sur-

rendering the Collateral. Accordingly, it is

ORDERED:

1. The Debtors shall have until June 2, 2000 to filed an amended statement of intentions setting forth with respect to the Collateral whether they intend to surrender it, redeem it, or reaffirm the Debt.

2. The Debtors shall thereafter timely perform their intentions with respect to the Collateral in accordance with Bankruptcy Code § 521(2)(B). The Court shall defer entry of an order granting the Debtors a discharge until July 21, 2000 to provide the Debtors with sufficient time to perform their intentions.

3. Implicit in the "Other" option is the assumption that a debtor as a matter of law may keep a vehicle simply by making the payments. While this may be true from a practical perspective since many creditors will not repossess a car if they are receiving timely payments, it is far from certain that as a matter of law the Debtors would be protected. First, the discharge injunction of Bankruptcy Code § 524 does not protect property upon which a creditor has a lien, only the debtor from *in personam* liability on a pre-petition debt that has not been reaffirmed. Second, a debtor's failure to reaffirm would result in a material change to the contractual undertaking of the debtor when the loan was made. Under such circumstances, the Debtors would face the uncertainty that at any given time, the secured creditor may deem itself insecure or otherwise declare a default and avail itself of its repossession rights. *See, e.g., Quest v. Barnett Bank of Pensacola,* 397 So.2d 1020, 1021 (Fla. 1st DCA 1981) (citing § 671.208, Fla.Stat., for the proposition that "insecurity" clauses allowed under U.C.C. § 1–208 permit

an acceleration of a note provided the creditor "in good faith believes that the prospect of payment of performance is impaired"); *In re Belanger,* 118 B.R. 368, 372 (Bankr.E.D.N.C. 1990) ("In fact, default clauses which permit the lender to declare a default in the event that the creditor deems its security interest insecure are specifically authorized by the Uniform Commercial Code and may be exercised by a secured lender if it has a good faith belief that the prospect for payment is impaired.") This possibility, under appropriate circumstances, may tilt in favor of court approval of a reaffirmation agreement.

4. Interestingly, the Debtors make two seemingly inconsistent arguments. On the one hand, they argue that they should be able to utilize the "Other" option of retaining the Collateral by making the contractual payments but at the same time argue that the payments are too high and, therefore, it is not in their interests to be bound to make the payments as they would be if they executed a reaffirmation agreement.