**In re Jonathan L. CLAFLIN, Debtor.**

**BankBoston, N.A., Appellant,**

**v.**

**Jonathan L. Claflin, Appellee.**

**No. MW 99–090.**

United States Bankruptcy Appellate Panel of the First Circuit.

June 30, 2000.

Matthew J. McGowan and Salter, McGowan, Sylvia & Leonard, Inc., Providence, RI, for Appellant.

Christopher M. Lefebvre and Claude & Christopher, Lefebvre, P.C., Pawtucket, RI, for Appellee.

Before GOODMAN, CARLO and DEASY, U.S. Bankruptcy Judges.

DEASY, Bankruptcy Judge.

## I. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel has jurisdiction of this appeal pursuant to 28 U.S.C. § 158(b). The Bankruptcy Court's findings of fact are evaluated pursuant to the "clearly erroneous standard" of review and its conclusions with respect to the law are reviewed *de novo*. *See Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 30 (1st Cir.1994). The Bankruptcy Court's interpretation of 11 U.S.C. §§ 521 and 524 present questions of law.[1] Its application of such statutory sections to the particular facts of this case poses a mixed question of law and fact, subject to the clearly erroneous standard, unless the Bankruptcy Court's analysis was "infected with legal error." *Winthrop Old Farm Nurseries, Inc. v. New Bedford Inst. For Sav. (In re Winthrop Old Farm Nurseries, Inc.),* 50 F.3d 72, 73 (1st Cir.1995) (quoting *Williams v. Poulos,* 11 F.3d 271, 278 (1st Cir.1993)).

## II. BACKGROUND

On June 10, 1999, Jonathan L. Claflin (the "Debtor") filed for bankruptcy under Chapter 7. As of the petition date, the Debtor owed BankBoston, N.A. (the "Bank") approximately $5,600 pursuant to a 1996 loan obligation (the "Loan").[2] The

---

1. Unless otherwise noted, all section references hereinafter are to Title 11 of the United States Code.

2. The original principal amount of the loan was $11,610. The $5,600 figure is derived from the Appellant's Brief. *See* Appellant's Brief at 2. Although the Appellee states that the debt amount was $6,212.88 as of the petition date, *see* Appellee's Brief at 1, the

Loan is secured by a 1993 Mercury Sable (the "Vehicle"). At the time of filing for bankruptcy, the Debtor was current on the Loan, having made 42 of the 60 monthly installment payments of $260.98 on a timely basis.[3]

The Debtor and the Bank executed a reaffirmation agreement with respect to the Loan (the "Agreement"). The Debtor's counsel opted not to sign a declaration stating, *inter alia*, that the Agreement does not impose an undue hardship on the Debtor, as envisioned by § 524(c)(3). It is apparently the Debtor's counsel's practice to rarely sign such declarations and instead pass "the burden of approving reaffirmation agreements onto the Bankruptcy Court." *See* Appellee's Brief at 1, n. 1. Because the Agreement was not accompanied by a § 524(c)(3) declaration, the Bankruptcy Court held a hearing on September 21, 1999 with respect to the question of whether the Agreement should be approved. *See* § 524(d).

A careful reading of the transcript of the September 21, 1999 hearing reveals that the Bankruptcy Court passed on two distinct issues: (1) whether the Agreement could be approved as in the best interest of the Debtor and not an undue hardship, as required by § 524(c)(6); and (2) whether the Debtor complied with § 521(2), as interpreted by the Court of Appeals for the First Circuit in *Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843 (1st Cir.1998), notwithstanding the fact that the Debtor refused to redeem or surrender the Vehicle following the Bankruptcy Court's refusal to approve the Agreement. *See* Transcript at 10 ("What I am prepared to rule on are two matters: Whether this reaffirmation agreement is in the best interest of the debtor and whether it imposes an undue hardship, and also on the question of compliance with *Burr*."). The Bankruptcy Court first ruled that the Agreement was not in the Debtor's best interest and therefore could not be approved. *See id.* The Bankruptcy Court then ruled that the Debtor had complied with the requirements of *Burr*. *See id.* at 10–11.

Although the Bank in its brief limits its explicit statement of the issue on appeal to the Bankruptcy Court's first ruling—i.e., that the Agreement could not be approved pursuant to § 524(c)(6)—the second ruling concerning the issue of whether the Debtor complied with *Burr* is inexorably intertwined with the first ruling and therefore will be reviewed by the Panel. Moreover, the Bank implicitly raises the second ruling by expressly challenging it in arguing that the Bankruptcy Court's first ruling should be reversed. *See, e.g.*, Appellant's Brief at 11 (stating that, pursuant to *Burr*, "if the reaffirmation agreement is not approved, the Debtor must redeem the collateral, and if he can't do that, he must surrender it"). Finally, if the Panel reverses the Bankruptcy Court's decision, the Bank requests that we either approve the Agreement or order the Debtor to redeem or surrender the Vehicle. *See* Appellant's Brief at 20. The Bankruptcy Court's two rulings shall be addressed in reverse order, since the first analytically builds on the second.

## III. DISCUSSION

Before the Bankruptcy Court's substantive rulings may be addressed, a threshold question must be answered: does the Bank have standing to appeal the Bankruptcy Court's order denying approval of the Agreement? In addition, a brief discussion of the *Burr* decision is necessitated by its central prominence in the instant appeal.

### A. Standing

 It is generally settled law that only a debtor may seek bankruptcy court

---

discrepancy is not crucial to the Panel's conclusions.

3. It also appears that, at the time of filing for bankruptcy, the value of the Vehicle was close to the amount owed under the Loan. *See* Transcript of September 21, 1999 Bankruptcy Court hearing at 2–3 [hereinafter the "Transcript"].

844

approval of a reaffirmation agreement. *See In re Kamps*, 217 B.R. 836, 844 (Bankr.C.D.Cal.1998); *In re Carlos*, 215 B.R. 52, 61 (Bankr.C.D.Cal.1997) ("Case law is uniform in holding that only the debtor may seek bankruptcy court approval of a reaffirmation agreement."); *In re Farmer*, 13 B.R. 319, 319–20 (Bankr. M.D.Fla.1981). However, the standing issue raised by the Bank's appeal is whether a creditor may be heard in the context of an appeal after such approval is denied.

■ Appellate standing in bankruptcy cases and proceedings is limited to aggrieved parties or, more specifically, parties that are directly and adversely affected pecuniarily by a bankruptcy court order or decree. *See In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir.1987). In *BankBoston, N.A. v. Nanton*, the U.S. District Court for the District of Massachusetts held that a creditor is an aggrieved party under the *El San Juan Hotel* standard, and therefore has standing, in the context of an appeal after a bankruptcy court declared an attorney-certified reaffirmation agreement unenforceable. *See BankBoston, N.A. v. Nanton*, 239 B.R. 419, 421 (D.Mass.1999). Although similar on the surface, *Nanton* can be distinguished from the facts of this case. In *Nanton*, the reaffirmation agreement was enforceable between the parties since it complied with all of § 524(c)'s requirements at the time it was filed with the bankruptcy court. The issue in *Nanton*, therefore, was whether the bankruptcy court retained oversight authority of attorney-certified reaffirmation agreements to ensure compliance with § 524(c), and whether it had the authority to find an otherwise enforceable reaffirmation agreement unenforceable. In the instant case, the Agreement was not certified by the Debtor's attorney and

therefore was not an enforceable agreement under § 524(c) when it was filed with the Bankruptcy Court. It could only have become enforceable upon approval by the Bankruptcy Court. *See* § 524(c).

In *McClellan Fed. Credit Union v. Parker (In re Parker)*, the Court of Appeals for the Ninth Circuit held that a creditor had standing to appeal a bankruptcy court's denial of approval of a reaffirmation agreement between a creditor and a debtor not represented by an attorney. *See McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668, 670–71 (9th Cir.1998), *cert. denied*, 525 U.S. 1041, 119 S.Ct. 592, 142 L.Ed.2d 535 (1998) ("We conclude that the [creditor] was an 'aggrieved person' and had standing to appeal the bankruptcy court's refusal to approve the reaffirmation agreement."). In *Parker*, the agreement was not certified by an attorney and was therefore not enforceable between the parties under § 524(c) when it was filed with the bankruptcy court.[4] The *Parker* Court found that the effect of the denial amounted to forcing a "quasi-reaffirmation" upon the creditor because the debtor could keep the collateral on a nonrecourse basis. *See Parker*, 139 F.3d at 671. The Court held that the creditor had a pecuniary interest in recovering the full balance of the car loan by having recourse not only against the collateral, but also against the debtor, and that it therefore was an "aggrieved person" with standing to appeal the bankruptcy court's refusal to approve the reaffirmation agreement. *See id.* Notwithstanding the fact that, unlike controlling precedent in the First Circuit, the Court of Appeals for the Ninth Circuit permits debtors to retain collateral without entering into reaffirmation agreements, under the Bankruptcy Court's order in this case, the Bank is in the same legal and financial position as the creditor in *Parker*.

**4.** Unlike the First Circuit, Ninth Circuit precedent permits the so-called fourth option under § 521(2), namely retention of collateral without reaffirmation so long as the debtor remains current. *See Parker*, 139 F.3d at 673. Accordingly, the creditor in *Parker* was in the

same position after the bankruptcy court denied approval of the reaffirmation agreement as it would have been if the agreement had never been signed by the parties. The competing interpretations of § 521(2) are discussed in Part III.B *infra*.

In light of the threshold for standing as articulated in *El San Juan Hotel* and the rationale of the *Parker* decision, the Panel finds that the Bank has standing to bring this appeal.

## B. Section 521(2) and *Burr*

Because § 521(2) and the *Burr* decision are integral to the issues raised by the instant appeal, a brief discussion is warranted. By its explicit terms, § 521(2) is applicable only to Chapter 7 debtors who have consumer debts secured by property of the estate. *See* § 521(2). In essence, § 521(2) has two broad requirements: (1) within 30 days following the petition date, a debtor must file a statement of intention specifying whether he or she intends to retain or surrender estate property securing consumer debts; and (2) within 45 days following the date the statement of intention is filed, the debtor must perform his or her stated intention. *See id.* These directives are relatively straightforward. Interpretive difficulty arises, however, when a Chapter 7 debtor, who desires to retain property, contemplates how to state his or her intention. Section 521(2)(A) provides that a debtor must state his or her intention to retain or surrender, "and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property . . . ." *See* § 521(2)(A).

The issue of how § 521(2) should be interpreted has engendered a great deal of controversy,[5] and has resulted in two competing views. One view is that § 521(2)(A) requires a debtor who intends to retain property to state whether he or she will do so through redemption or reaffirmation. According to that view, Chapter 7 debtors are limited to the options of redemption, reaffirmation, or surrender. *See Johnson,* 89 F.3d at 249; *Taylor v. AGE Fed. Credit Union (In re Taylor),* 3 F.3d 1512 (11th

Cir.1993); *In re Edwards,* 901 F.2d 1383 (7th Cir.1990). The opposing view holds that the options provided by § 521(2) are merely illustrative so that a debtor may comply with § 521(2) by stating an intention to retain collateral and merely staying current on the underlying obligation. *See Capital Communications Fed. Credit Union v. Boodrow (In re Boodrow),* 126 F.3d 43 (2d Cir.1997), *cert. denied,* 522 U.S. 1117, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998); *Home Owners Funding Corp. of Am. v. Belanger (In re Belanger),* 962 F.2d 345 (4th Cir.1992); *McClellan Fed. Credit Union v. Parker (In re Parker),* 139 F.3d 668 (9th Cir.1998), *cert. denied,* 525 U.S. 1041, 119 S.Ct. 592, 142 L.Ed.2d 535 (1998); *Lowry Fed. Credit Union v. West,* 882 F.2d 1543 (10th Cir.1989).

In *Burr,* the Court of Appeals for the First Circuit stated its position regarding the § 521(2) controversy by siding with the more restrictive view that a Chapter 7 debtor's § 521(2) options are limited to surrender, redemption, or reaffirmation. *See Burr,* 160 F.3d at 849.

## C. Whether the Bankruptcy Court was Correct in Concluding that the Debtor Complied with *Burr*

In ruling that the Debtor had complied with the requirements of *Burr,* the Bankruptcy Court stated: "As to the question on *Burr,* I rule that the debtor has complied with the requirement of—under *Burr,* of selecting one of those three options. The debtor has done what—all that could be expected of the debtor." Transcript at 10–11. Although the Bankruptcy Court's reasoning is not comprehensive, the implicit logic seems clear. The Bankruptcy Court appears to have concluded that merely entering into a reaffirmation agreement satisfies the requirements of *Burr,* regardless of whether such an agreement is enforceable between the parties. This implicit reasoning necessarily follows from

---

5. One court of appeals has characterized the issue as having been "hotly contested in recent jurisprudence." *Johnson v. Sun Finance*

*Co. (In re Johnson),* 89 F.3d 249, 251 (5th Cir.1996) (per curiam).

the rulings of the Bankruptcy Court. The Debtor neither redeemed nor surrendered the Vehicle; his only action was to enter into a reaffirmation agreement with the Bank which, without attorney certification or approval by the Bankruptcy Court, never became an enforceable agreement. The question, therefore, is whether execution of a reaffirmation agreement that is, or becomes, unenforceable is enough to clear the hurdles established by *Burr*.

■ The problem with the Bankruptcy Court's *Burr*-compliance conclusion is twofold. First, such a conclusion ignores the plain language of the *Burr* decision. Second, a finding that a debtor may comply with *Burr* by merely executing a reaffirmation agreement leads to potential counter-intuitive results and would effectively strip *Burr* of its substance.

The *Burr* Court's holding expressly encompasses the first two subparagraphs of § 521(2), which have two distinct functions. As discussed, § 521(2)(A) requires a debtor to state his or her intention, while § 521(2)(B) requires the debtor to perform such an intention. In the final paragraph of its opinion, the *Burr* Court specifically concluded that:

> [W]e believe that 11 U.S.C. § 521(2) unambiguously requires chapter 7 debtors wishing to retain property of the estate that secures a consumer debt to elect one of the retention options specified in 11 U.S.C. § 521(2)(A), and then to *perform the elected option* in accordance with 11 U.S.C. § 521(2)(B).

*Burr*, 160 F.3d at 849 (emphasis added). This language makes clear that the *Burr* Court concluded that, when applicable, § 521(2) requires a debtor to specify his or her intent to reaffirm, redeem, or surrender, and then to actually perform one of the three options. The Bankruptcy Court apparently concluded that "performance" results from the mere execution of a reaffirmation agreement that was never enforceable under § 524(c). Such a holding effectively renders the decision in *Burr* meaningless. The Panel finds defining

performance in such a limited manner to be contrary to the holding of *Burr*.

Although the *Burr* Court did not expressly articulate the parameters of what constitutes performance within the context of § 521(2)(B), the Panel concludes that § 521(2)(B) performance does not exist when a debtor executes an unenforceable reaffirmation agreement. The *Burr* Court explicitly rejected the more liberal view of § 521(2), which allows debtors not in default to retain collateral without reaffirmation, redemption, or surrender. The Bankruptcy Court's ruling that the Debtor was in compliance with *Burr* effectively allows the more liberal result, albeit via a more tortured path. At the end of the day, the Bankruptcy Court allowed the Debtor to retain the Vehicle without reaffirmation, redemption, or surrender. Such a result cannot be squared with the holding of *Burr*.

In addition to running counter to the reasoning and conclusions found in *Burr*, following the Bankruptcy Court's ruling would potentially open a proverbial Pandora's Box of strange results. If merely executing a reaffirmation agreement is found to satisfy *Burr*, a debtor could potentially avoid the limitations of *Burr* by his or her own design. Section 524(c)(2)(A) provides that an executed reaffirmation agreement may unilaterally be rescinded by a debtor at any time within 60 days following the date the agreement is filed. *See* § 524(c)(2)(A). Thus, a debtor could specify that he or she intends to reaffirm a debt, have an executed agreement certified by the debtor's counsel, and file it with a bankruptcy court within 45 days. The reaffirmation agreement would then be enforceable under the terms of § 524(c). Shortly thereafter, the debtor could rescind the agreement pursuant to § 524(c)(2)(A) and, as a result, retain collateral while arguably avoiding the requirements of *Burr*. Such an awkward result potentially flows from the Bankruptcy Court's ruling that the Debtor complied with *Burr*. When such a possibility is cou-

pled with the strained outcome realized in the instant matter—i.e., that the Debtor was allowed to retain the Vehicle without actually performing a reaffirmation, redemption, or surrender—the conclusion that the Bankruptcy Court's reading of § 521(2) cannot be reconciled with *Burr* is strengthened. Any other conclusion would render *Burr* substantively lifeless. Section 521(2)(B)'s performance requirement is not satisfied when an executed reaffirmation agreement is not certified by a debtor's counsel or is deemed to be an undue hardship or not in a debtor's best interests and, therefore, is not an enforceable agreement between a debtor and creditor.

### D. Whether the Bankruptcy Court was Correct in Not Approving the Agreement

The Bank argues that the Bankruptcy Court's refusal to approve the Agreement was incorrect for two reasons: (1) the Bankruptcy Court partially based its decision on the erroneous assumption that the Debtor could retain the Vehicle by merely remaining current on the Loan despite the contrary directives of *Burr*; and (2) the evidence relied upon by the Bankruptcy Court in reaching its decision to not approve the Agreement was unduly limited and, in any event, does not support the ultimate decision.

■■■■ Section 524(c)(6) provides the applicable legal standard regarding the approval of reaffirmation agreements subject to court review. To be enforceable, a court must find that a reaffirmation agreement is in the debtor's best interest and that it does not impose an undue hardship on the debtor or a dependent of the debtor. *See* § 524(c)(6). In the context of § 524(c)(6), the term "undue hardship" has been defined as a reaffirmation that causes a "significant, but otherwise avoidable obstacle to the attainment or retention of necessaries by the debtor or the debtor's dependents." *In re Melendez, et al.*, 224 B.R. 252, 261 (Bankr.D.Mass.1998). When

applying the best interest and undue hardship standards under § 524(c)(6), District Judge Gorton has suggested that the following factors be considered:

1. What alternatives, other than reaffirmation, are available to a debtor who wishes to retain estate property;
2. Whether the underlying debt is secured or unsecured;
3. If the debt is secured, the threat of repossession of, and the amount of equity, in the collateral;
4. The extent to which the collateral is a necessity; and
5. The debtor's payment history on the collateral.

*See Nanton*, 239 B.R. at 425. Moreover, Judge Gorton has suggested that when an evaluation of a debtor's Schedules I and J reveals a monthly income deficit, only a *prima facie* concern is raised regarding whether a reaffirmation agreement is in a debtor's best interest and whether it imposes an undue hardship. *See id.* at 426. The Panel finds the *Nanton* opinion persuasive insofar that it details factors to be considered in passing upon the question of whether a reaffirmation agreement is in a debtor's best interest and whether it imposes an undue hardship.

■■■■ In reaching its conclusion to not approve the Agreement, the Bankruptcy Court stated:

I find that this reaffirmation agreement is *not* in the best interest of the debtor. The debtor's expenses exceed his income, so I think it does impose an undue hardship as well, but it's not in the best interest of the debtor because the debtor is current on mortgage payments. If the debtor ceases to be current on mortgage—on car payments, then there will be repossession, so the debtor gets no benefit there. There's no *quid pro quo* here that the bank is giving the debtor; and if the debtor—if the debtor ceases to be current, there will be repossession or a possession, and a sale at wholesale,

and I find that the wholesale value obtained would most likely be less than the amount of the debt. That would leave a deficiency. With this reaffirmation agreement approved and valid, the deficiency would not be dischargeable, so the debtor is just throwing away the benefit of a bankruptcy discharge, which makes absolutely no sense, so I am not approving the reaffirmation agreement.

Transcript at 10. The quoted language above makes clear that the Bankruptcy Court considered the Debtor's Schedules I and J, which reveal a monthly net deficit, in deciding not to approve the Agreement. However, because the Bankruptcy Court gave additional reasons for its decision, it appears to have considered the Debtor's Schedules I and J to be merely a *prima facie* indication that the Agreement was not in the Debtor's best interest and would impose an undue hardship, as envisioned by *Nanton*. The question, therefore, is whether such additional reasons support the Bankruptcy Court's conclusion.

The only reason other than the Debtor's monthly net income deficit considered by the Bankruptcy Court appears to be that the Debtor would realize no economic benefit from reaffirmation as compared to retaining the Vehicle without reaffirming the Loan, a view which presupposes that the Debtor could retain the Vehicle despite his refusal to redeem or surrender. However, as discussed above, such a premise is at odds with *Burr* and therefore faulty. Accordingly, the Bankruptcy Court was incorrect in basing its decision to not approve the Agreement on the assumption that the Debtor could retain the Vehicle without redemption, surrender, or a reaffirmation agreement capable of withstanding § 524(d) muster. The Bankruptcy Court's decision to not approve the Agree-

ment shall therefore be vacated and remanded.

**E. The Bank's Requested Remedy**

In its brief, the Appellant asks this Panel to reverse the Bankruptcy Court and either approve the Agreement or order the Debtor to redeem or surrender the Vehicle. *See* Appellant's Brief at 20. For the reasons set forth in this opinion, the record is not sufficient to enable this Panel to make a determination regarding whether the Agreement should be approved or disapproved. Pending such a final court order, imposition of a remedy is premature.

If on remand the Bankruptcy Court determines that the Agreement should still not be approved, the Bankruptcy Court shall determine how and when the Debtor shall elect one of the remaining options under § 521(2) (i.e., redemption or surrender). If the Debtor fails to elect and perform one of the other two options, he will be in direct violation of § 521(2), as interpreted by *Burr*. The Bankruptcy Court will then be faced with the issue of what remedies are available to the Bank under all the facts and circumstances. The problematic nature of this inquiry flows from the fact that the Bankruptcy Code is silent with respect to available remedies following a debtor's noncompliance with § 521(2). *See In re Irvine*, 192 B.R. 920, 921 (Bankr.N.D.Ill.1996) ("[T]here is no statutory sanction for failure to comply with Sections 521(2)(A) and (B).").

The courts have answered the § 521(2) remedy question in a multitude of ways. For example, some courts conclude that compelling a debtor to perform pursuant to a bankruptcy court's. § 105(a) equitable powers is warranted,[6] while others

---

6. Accordingly, a possible remedy could involve compelling a debtor to surrender property. However, this begs the question of to whom property should be surrendered. Most courts and commentators assume, without extended discussion, that it involves a debtor physically turning property directly over to

the relevant secured creditor. *See, e.g., In re Edwards*, 901 F.2d 1383, 1385 (7th Cir.1990) ("[A] debtor may choose to surrender the collateral to the creditor."); Michael P. Alley, *Redemption, Reaffirmation, Exemption, and Retention in Chapter 7 Bankruptcy: Extinction Looms Near for the Free Ride*, 47 U. Kan.

reason that dismissal of the case pursuant to § 707(a) is appropriate. *See, e.g., In re Harris,* 226 B.R. 924, 925 (Bankr.S.D.Fla. 1998) (allowing § 707(a) dismissal); *In re Chavarria,* 117 B.R. 582 (Bankr.D.Idaho 1990) (compelling performance pursuant to § 105(a)). However, such remedies appear to be the exception rather than the rule given their relative impractical and severe effect. *See In re Donnell,* 234 B.R. 567, 572–74 (Bankr.D.N.H.1999) (finding both remedies unavailable under normal circumstances). Instead, the preferred remedy for a debtor's failure to comply with § 521(2) is relief from the automatic stay for the relevant creditor. *See id.* at 574. In "all but the most unusual cases," a debtor's failure to comply with § 521(2) will result in a finding that cause exists to lift the stay pursuant to § 362(d)(1). *Id.* Accordingly, if on remand the Bankruptcy Court again disapproves the Agreement and the Debtor fails to elect and perform one of the two remaining options, the question will arise as to whether the instant matter is a "most unusual case," and therefore whether the Bank is entitled to a remedy beyond relief from the stay.

## IV. CONCLUSION

The Bankruptcy Court's order not approving the Agreement is VACATED and the case is REMANDED to the Bankruptcy Court for further proceedings consistent with this opinion.

**SO ORDERED.**

L.Rev. 683, 685 (1999) ("If the debtor chooses to surrender the property ... the debtor and creditor simply arrange for the turnover of the property."). However, § 521(4) requires a debtor to "surrender to the trustee all property of the estate ...." 11 U.S.C. § 521(4). Thus, because there is a general duty to surrender estate property to the bankruptcy trustee, property that will almost always include property subject to § 521(2), the "surrender" contemplated in § 521(2) appears to involve the surrender of property to the Chapter 7 trustee administering the estate, not the relevant creditor. *See In re Lair,* 235 B.R. 1, 60–61 (Bankr.M.D.La.1999). If § 521(2) "surrender" is understood to mean surrendering estate property directly to a secured creditor, such action may arguably place a debtor in direct violation of § 521(4).