**In re Raymond E. RATHBUN,
Elizabeth Rathbun,
Debtors.**

No. 01–11823.

United States Bankruptcy Court,
D. Rhode Island.

Dec. 28, 2001.

**436**

Seth A. Perlmutter, Robert B. Jacquard, Perlmutter & Igliozzi, Cranston, RI, for Debtors.

Matthew J. McGowan, Salter, McGowan, Sylvia & Leonard, Inc., Providence, RI, for Creditor Sovereign Bank New England.

Gregory Hamilton, Providence, RI, Chapter 7 Trustee.

### DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on the motion by Sovereign Bank New England, as successor to BankBoston, N.A. ("the Bank"), to compel the Debtors to reaffirm their debt to the Bank, or to surrender collateral consisting of real property. The Debtors now object to reaffirmation, although their statement of intent, filed pursuant to 11 U.S.C. § 521(2)(A), indicates that they will reaffirm the debt. The issues are (1) whether the loan in question is a consumer debt secured by property of the estate, thereby falling under 11 U.S.C. § 521(2)(A); and, if so, what remedy is available to the Bank if the Debtors fail to comply with § 521(2)(B)? The Debtors assert (1) that a loan secured by real property is not a consumer debt; (2) that they may remain in possession of the real estate while current on their mortgage; and (3) that they are entitled to a discharge of the loan without reaffirming their obligation to the Bank.

For the reasons given below, I find and/or conclude that the loan in question *is* a consumer debt, that 11 U.S.C. § 521(2) is applicable, and that the Debtors are required to make one of the statutory elections. I also agree with those courts which grant creditors relief from stay when debtors fail to elect and perform in accordance with § 521(2).

### BACKGROUND

In January 1999 the Rathbuns borrowed $25,000 from the Bank, secured by a mortgage on their residence at 3 Briar Avenue in Hope, Rhode Island. When they filed their Chapter 7 petition in May 2001, the Debtors owed the Bank approximately $23,000.

### I. CONSUMER DEBT

The Debtors wish to neither reaffirm or surrender, contending that their home mortgage loan is not a consumer debt governed by Section 521(2) which provides:

The Debtor shall—

. . .

(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—

(A) within 30 days after the date of the filing of a petition under chapter 7 of this title . . . file with the clerk a statement of his intention with respect to the retention of such property and, if applicable, specifying . . . that the debtor intends to redeem such property . . .

(B) within forty-five days after the filing of a notice of intent ... the debtor shall perform his intention with respect to such property...

■■■ The Code defines consumer debt as "debt incurred by an individual primarily for a personal, family or household purpose." 11 U.S.C. § 101(8). While Collier's suggests that "[t]o the extent that a debt incurred for personal, household or family purpose is secured by real property, the legislative history indicates that it will not be a consumer debt." Lawrence P. King et al., Collier on Bankruptcy p. 101–46 (15th Ed. Rev.2001). The case law pretty much rejects this notion. *See In re Kelly,* 841 F.2d 908, 912 (9th Cir.1988)("[R]esort to legislative history is not appropriate because the statutory language is clear and precisely addresses the situation."); *see also Guaranty Sav. & Loan Ass'n v. Lowe,* 109 B.R. 698, 699 (W.D.Va.1990). These courts have noted that the statute is clear, and that the answer to whether a debt is a consumer debt depends, in large part, on whether the debt was incurred with an eye toward profit. *In re Booth,* 858 F.2d 1051, 1055 (5th Cir.1988). ("Accordingly, the test for determining whether a debt should be classified as a business debt, rather than a debt acquired for personal, family or household purposes, is whether it was incurred with an eye toward profit."); *Citizens Nat'l Bank v. Burns (In re Burns),* 894 F.2d 361, 363 (10th Cir.1990); *accord Cypher Chiropractic Ctr. v. Runski (In re Runski),* 102 F.3d 744, 747 (4th Cir.1996).

The issue whether a home mortgage may constitute consumer debt has been litigated extensively in the context of 11 U.S.C. § 707(b). *See Neary v. Padilla (In re Padilla),* 222 F.3d 1184, 1193 (9th Cir. 2000); *Stewart v. United States Trustee (In re Stewart),* 175 F.3d 796, 806 (10th Cir.1999); *In re Krohn,* 886 F.2d 123, 126

(6th Cir.1989) (applying § 101(7)—the predecessor to § 101(8), which contained the same language); *In re Kelly,* 841 F.2d at 912 (same). Although the question whether the Rathbuns' obligation is a consumer debt does not arise in a 707(b) context, it does involve the same definition of consumer debt found in Section 101(8), so these cases are relevant for the purpose of resolving the issue at bench.

■■■ The Debtors bear the burden of establishing that the mortgage should be excepted from the provisions of Section 521(2). *See Jodoin v. Samayoa (In re Jodoin),* 209 B.R. 132, 141 (9th Cir. BAP 1997), *quoting Hill v. Smith,* 260 U.S. 592, 595, 43 S.Ct. 219, 67 L.Ed. 419 (1923)("[T]he party claiming the exception to a statutory provision is required to prove the exception.") While such a showing would remove the mortgage from inclusion in the consumer debt equation, thereby making Section 521(2) inapplicable, *see Stewart,* 175 F.3d at 807; *In re Scheinberg,* 132 B.R. 443, 445 (Bankr. D.Kan.1991); *In re Hall,* 258 B.R. 45, 46 (Bankr.M.D.Fla.2001), the Debtors have not made such a showing, but focus on whether the property serving as collateral for Sovereign's loan is property of the estate. In their memorandum, however, the Debtors concede that the debt is secured by property of the estate. *See also* 11 U.S.C. § 541(a)(1). As for the question whether the debt is consumer in nature, the only evidence is the Debtors' Statement of Intent filed with the Court, where they concede that the obligation is a consumer debt secured by property of the estate. It (the Statement of Intent) says: "I have filed a schedule of assets and liabilities which includes consumer debts secured by property of the estate." Below this text, they list the real estate at 3 Briar Avenue, Hope, Rhode Island, and state that they wish to reaffirm the debt with

Sovereign Bank. More importantly, the Rathbuns purchased and maintained the home as their residence, and there is nothing to suggest that this debt was incurred with an "eye toward profit." Based on the record, the pertinent statute, and the applicable case law, I conclude that the debt to Sovereign is consumer in nature, and rule that they must elect and perform one of the options provided in Section 521(2)(i.e., redemption or reaffirmation). *See In re Burr,* 160 F.3d 843, 848–49 (1st Cir.1998).

### THE REMEDY

■ We next address the question of what is the creditor's remedy where the Debtors fail to elect or perform their stated intention pursuant to 11 U.S.C. § 521(2)(B)—and this is the real rub in these cases, as the Bankruptcy Code is silent on the issue. *See BankBoston, N.A. v. Claflin (In re Claflin),* 249 B.R. 840, 848 (1st Cir. BAP 2000); *see also In re Irvine,* 192 B.R. 920, 921 (Bankr.N.D.Ill.1996) ("[T]here is no statutory sanction for failure to comply with Sections 521(2)(A) and (B)"), so the remedy is an open issue whose resolution, in the absence of statutory guidance, is left by legislative default to the discretion of the court. *American Nat'l Bank & Trust Co. v. DeJournette,* 222 B.R. 86, 97 (W.D.Va.1998) (Holding that the resolution of a Section 521 claim is within the court's discretion.)

■ Having this discretion over the choice of remedy for a debtor's failure to perform his/her stated intention under § 521(2)(B) has led bankruptcy courts to fashion remedies or sanctions under various provisions of the Bankruptcy Code. *See In re Donnell,* 234 B.R. 567, 571 (Bankr.D.N.H.1999). For example, some

courts conclude that compelling debtors to perform their stated intention pursuant to the bankruptcy court's § 105(a) equitable powers is warranted, while others reason that dismissal of the case pursuant to § 707(a) is appropriate. *See In re Claflin,* 249 B.R. at 848–49 (list of courts and their remedies). A third approach, the one with which I agree, is that such remedies should be the exception rather than the norm, given their impractical and/or draconian consequences, *id.* quoting *In re Donnell,* 234 B.R. at 572–74. I will follow *Donnell,* involving a creditor situated similarly to the creditor here, where Judge Deasy granted relief from stay based on the debtors' failure to perform their stated intention pursuant to Section 521(2)(B). As I believe the *Donnell* case to be the best treatment of the subject, I adopt and incorporate the opinion herein, instead of trying new ways to say the same thing.

Accordingly, because the Debtors have not performed either their stated intention, nor any of the alternatives allowed under 11 U.S.C. § 521(2)(B), Sovereign Bank is granted relief from the automatic stay, with leave to pursue its state court remedies.

### APPENDIX

### MEMORANDUM OPINION AND ORDER

#### I. BACKGROUND

The motion before the Court raises the following issue: what remedies are available to a secured creditor when a debtor fails to perform his or her duties under 11 U.S.C. § 521(2)(B)?[1] The facts in this case are relatively straightforward and not in dispute. David and Catherine Donnell

---

1. Unless otherwise noted, all section references hereinafter are to Title 11 of the United States Code.

(the "Debtors") filed a Chapter 7 petition on January 19, 1999. At the time of filing, the Debtors owed approximately $5,000 to BankBoston, N.A. (the "Bank"), the debt being secured by a security interest in a 1994 Chevrolet Lumina (the "Vehicle"). According to the Bank, the Debtors have been in default with respect to the debt since the beginning of their bankruptcy case. Contemporaneously with filing their petition, Debtors filed their statement of intention, expressly indicating that they intended to reaffirm the debt owed to the Bank in accordance with § 524. The Debtors, however, did not perform their intention to reaffirm the debt to the Bank before the expiration of the forty-five day time limit imposed by § 521(2)(B), which expired on March 5, 1999.

On March 11, 1999, the Bank filed a motion entitled "Motion to Compel Debtor [sic] to Reaffirm Debt or Redeem or Surrender Secured Collateral" (the "Motion"). The essence of the Motion is a request that this Court issue an order compelling the Debtors to surrender the Vehicle to the Bank should the Debtors refuse to reaffirm the debt owed or redeem the Vehicle. The Debtors filed a response to the Motion indicating their intent to reaffirm their debt to the Bank. A hearing was held on May 5, 1999, at which neither the Debtors nor the Debtors' attorney appeared. Because an order discharging the Debtors was entered on April 28, 1999, and thus pursuant to § 524(c)(1) reaffirmation is no longer available,[2] the Bank now requests that the Court order the Debtors to surrender the Vehicle.

The Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. DISCUSSION

### A. Section 521(2)

The statutory provision at issue is § 521(2). Falling under the general heading of "Debtor's Duties," it provides, in pertinent part:

(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph. . . .

Section 521(2) has given rise to a question of statutory interpretation: are the options provided in § 521(2) exclusive, i.e.,

---

**2.** Under § 524(c)(1) a reaffirmation agreement is not enforceable unless it is made before the debtor is granted a discharge. The Court does not need to decide the impact, if any, of the provisions of § 524(d) under the facts of this case.

are a debtor's choices limited to surrender, redemption, or reaffirmation, or does a debtor also have the option to retain the collateral by simply remaining current on the obligation? The courts of appeals that have ruled on this issue are split. Some courts have held that the listed options are merely illustrative and thus a debtor can fulfill his or her § 521 duties by stating an intention to retain the collateral and merely remaining current on the underlying debt. See *Capital Communications Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43 (2d Cir.1997), *cert. denied*, 522 U.S. 1117, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998); *Home Owners Funding Corp. of Am. v. Belanger (In re Belanger)*, 962 F.2d 345 (4th Cir.1992); *McClellan Fed. Credit Union v. Parker (In re Parker)*, 139 F.3d 668 (9th Cir.1998), *cert. denied*, 525 U.S. 1041, 119 S.Ct. 592, 142 L.Ed.2d 535 (1998); *Lowry Fed. Credit Union v. West*, 882 F.2d 1543 (10th Cir.1989). Other courts have held that the list of options is exclusive and thus if a debtor wishes to retain collateral, the debtor must elect to either redeem or reaffirm and then perform the election. See *Johnson v. Sun Fin. Co. (In re Johnson)*, 89 F.3d 249 (5th Cir.1996) (per curiam); *In re Edwards*, 901 F.2d 1383 (7th Cir.1990); *Taylor v. AGE Fed. Credit Union (In re Taylor)*, 3 F.3d 1512 (11th Cir.1993).

The Court of Appeals for the First Circuit has sided with the "exclusivity" group. See *Bank of Boston v. Burr (In re Burr)*, 160 F.3d 843 (1st Cir.1998). In *Burr*, the Court stated: "we believe that 11 U.S.C. § 521(2) unambiguously requires chapter 7 debtors wishing to retain property of the estate that secures a consumer debt to elect one of the retention options specified in 11 U.S.C. § 521(2)(A), and then to perform the elected option in accordance with 11 U.S.C. § 521(2)(B)." *Id.* at 849. However, the *Burr* decision did not address the issue of what consequences flow from a debtor's failure to make or perform such an election or what remedies are available to a secured creditor if the debtor fails to meet his or her obligations under *Burr*.

### B. The Issue

As a threshold matter, it is important to state the issue before the Court. There are two general duties that a debtor must perform under § 521(2). First, pursuant to § 521(2)(A), the debtor must state his or her intention within thirty days following the date the petition is filed or on or before the meeting of creditors, whichever comes first. Second, pursuant to § 521(2)(B), the debtor must perform the stated intention within forty-five days after filing the statement of intention. Both time periods may be extended by the bankruptcy court, for cause, within the applicable time period.

The Debtors have clearly fulfilled their § 521(2)(A) duties; they filed their statement of intention on the same date they filed their petition, thus fulfilling the thirty-day requirement. Furthermore, their statement of intention provides that they intended to reaffirm the debt owed to the Bank, thus fulfilling the *Burr* requirement that they must choose between redemption or reaffirmation should they desire to retain the collateral. However, the Debtors have not fulfilled their § 521(2)(B) duty. Pursuant to *Burr* and the express terms of § 521(2)(B), the Debtors should have performed their intention (i.e., reaffirmed their debt owed to the Bank) within forty-five days following the time they filed their statement of intention. This they did not do.

Because the Debtors fulfilled their § 521(2)(A) duties, the Court is not required to pass on what remedies are available to a secured creditor when a debtor fails to file a statement of intention within

the requisite time period. The Court leaves that issue for another day.[3]

### C. The § 521(2)(B) Period

What should occur during the § 521(2)(B) period (i.e., the forty-five day period following the filing of the statement of intention) deserves mention. Obviously, during this period, no bankruptcy remedies are available to a secured creditor solely for a debtor's failure to perform his or her stated intention under § 521(2)(B) since such failure is not actionable until the forty-five day period expires. However, the § 521(2)(B) period should not be one of inactivity, characterized by a "wait and see" approach by any party. The statutory framework envisions the debtor, secured creditor, and trustee all having roles during this period.

Section 704 lists duties of the trustee in connection with a bankruptcy case. Subsection (3) provides that a trustee shall "ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title...."[4] Thus, the trustee is charged with a duty to make sure that the debtor performs his or her stated intention within the § 521(2)(B) period.[5] While § 704(3) may not require the trustee to

initiate proceedings to obtain a remedy solely for the benefit of a secured creditor, it does require the trustee to at least monitor the debtor's performance of his or her intentions and to assist a secured creditor in communicating with a debtor, if necessary.[6] The debtor has a duty to perform the statement of intention within forty-five days after the filing of the statement. If the debtor does not perform the stated intention, relief may be available to the secured creditor and ultimately, once a discharge is granted, the option to reaffirm the debt may be lost. A secured creditor may wish to contact the debtor's counsel, or in the case of a *pro se* debtor the trustee, in order to discuss reaffirmation, provide the debtor with a proposed reaffirmation agreement, or inquire about the status of the debtor's performance of the stated intention.

### D. Remedies Available Following Noncompliance with § 521(2)(B)

Congress provided no express mechanism for enforcing § 521(2), save for the trustee's duty to ensure performance. *See In re Manderson,* 121 B.R. 617, 620–21 (Bankr.N.D.Ala.1990); *In re Irvine,* 192 B.R. 920, 921 (Bankr.N.D.Ill.1996) ("[T]here is no statutory sanction for fail-

---

**3.** Some courts suggest that the appropriate sanction may be to allow dismissal of the bankruptcy case pursuant to § 707(a). *See, e.g., Beneficial New York, Inc. v. Bushey (In re Bushey),* 204 B.R. 661, 663 (Bankr.N.D.N.Y. 1997) (citing *In re Green,* 119 B.R. 72 (Bankr. D.Md.1990)). This Court does not need to decide in this case whether such a sanction would be appropriate.

**4.** Section 704(3) does not expressly require the trustee to ensure that a debtor performs his or her § 521(2)(A) duties (i.e., that a debtor files a statement of intention within 30 days of the filing of the petition).

**5.** *See generally* U.S. Dept. of Justice, *Handbook for Chapter 7 Trustees* p. 6–5 (Oct. 1,

1998) (stating that a trustee has the duty to ensure the performance of the debtor's intentions).

**6.** Without § 704(3), a secured creditor could very well be hamstrung in trying to ensure that a debtor will perform the duties imposed by § 521(2)(B). A creditor is generally prohibited from directly contacting a debtor when the § 362 automatic stay is in effect. *See* 3 King et al., *Collier on Bankruptcy* ¶ 362.03[8][a] (15th rev. ed.1997). Thus, the trustee becomes the necessary channel of communication with a *pro se* debtor or a debtor whose counsel is unable to obtain a response to the creditor's inquiries.

ure to comply with Sections 521(2)(A) and (B).") Assuming that a debtor has properly stated his or her intention, but has not performed the intention within the requisite § 521(2)(B) time period, the question then becomes what remedies are available to a creditor? It appears that there is no fast and easy answer. Section 521 does not contain any enforcement provisions. Instead, the appropriate remedy is tied to the individual facts of the case at hand. *See Am. Nat'l Bank & Trust Co. v. De-Journette,* 222 B.R. 86, 97 (W.D.Va.1998) ("The proper resolution [of the § 521 remedy issue] seems to be a matter of discretion based on the facts of a given case."). In the absence of a specific statutory remedy for a debtor's failure to perform his or her intentions under § 521(2)(B), the courts have fashioned remedies or sanctions under several provisions of the Bankruptcy Code. Those remedies or sanctions include:

1. Compelling the debtor to comply with § 521(2)(B), pursuant to the Court's powers under § 105(a);

2. Dismissing the case pursuant to § 707(a);

3. Declaring the relevant debt non-dischargeable, pursuant to § 523(a); or

4. Granting relief from the automatic stay pursuant to § 362.

### 1. Compelling the Debtor to Comply Pursuant to § 105(a)

The first option, compelling the debtor to comply pursuant to a bankruptcy court's equitable powers under § 105(a),[7] appears to stand toward one extreme of the remedy continuum. Some courts have allowed this remedy in the context of a debtor's violation of § 521(2).[8] *See, e.g., In re Chavarria,* 117 B.R. 582 (Bankr.D.Idaho 1990); *In re G.E. Kennedy,* 137 B.R. 302 (Bankr. E.D.Ark.1992); *DeJournette,* 222 B.R. at 97. However, such a remedy is in the nature of specific performance or a mandatory injunction and should thus be reserved for an extraordinary case where other relief is inadequate. Section 105 orders should not be used in cases that do not present unique circumstances. *See In re Tameling,* 173 B.R. 627, 628 (Bankr. W.D.Mich.1994) ("For garden variety motions . . . this court declines to exercise [its authority under § 105 to require compliance with § 521(2)]."); *In re Irvine,* 192 B.R. 920, 921 (Bankr.N.D.Ill.1996) (citing *Tameling* with approval). The reluctance of the courts to use § 105 powers to enforce § 521(2), and more specifically § 521(2)(B), is warranted for two reasons.

First, assume that a debtor states his or her intent to reaffirm, but fails to do so

---

7. Section 105(a) provides that a bankruptcy court may "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." The use of such power must "be connected to, and advance the purposes of, specific provisions of the Code." *Thinking Mach. Corp. v. Mellon Fin. Serv. Corp. (In re Thinking Mach. Corp.),* 67 F.3d 1021, 1028 (1st Cir.1995).

8. Some courts question whether a creditor even has standing to seek enforcement of § 521(2) through § 105, based upon the fact that § 704(3) vests power to ensure performance of § 521(2)(B) in the trustee. *See*

*Bushey,* 204 B.R. at 663; *In re Crooks,* 148 B.R. 867, 872 (Bankr.N.D.Ill.1993). Although this Court is not required to pass on this issue, and thus reserves judgment, it appears that such a view may be an incorrect interpretation of § 704(3). Nowhere does § 704(3) provide that the power to ensure performance resides exclusively with the trustee. Moreover, Congress knows how to vest exclusive power in parties when it so desires. *See, e.g.,* § 707(a)(3) ("[A court may dismiss a case due to a debtor's failure to make certain filings,] but *only* on a motion by the United States trustee.") (emphasis added).

within the § 521(2)(B) period and a bankruptcy court issues an order to reaffirm or surrender the collateral, pursuant to its power under § 105, and the debtor then ignores the order. What should follow? A contempt order? Use of the U.S. Marshals to seize the relevant collateral? This Court agrees with those courts concluding that such action would place a bankruptcy court on a precarious path and should thus be avoided if possible. *See Tameling*, 173 B.R. at 628; *Bushey*, 204 B.R. at 663 ("By issuing an order to compel, the court may be traveling down a slippery slope leading to contempt, sanctions and the unseemly use of the United States Marshals....").

Second, assume that a bankruptcy court orders a debtor to reaffirm or surrender and the debtor complies by surrendering the collateral to the secured creditor. As the Bank conceded at the hearing, if the bankruptcy case is still open, the automatic stay would prevent the creditor from disposing of the collateral pending further action by the trustee or relief from the automatic stay. If the creditor does not dispose of the collateral in a timely manner, any equity available to a trustee or a debtor's exemption may be threatened, and the creditor may possibly be subject to negative state law consequences. *See* RSA 382–A:9–504(3) (requiring that disposition of collateral by a secured party must be commercially reasonable as to the method, manner, time, place, and terms); 4 White & Summers, *Uniform Commercial Code* § 34–15 (4th ed. 1995) ("The secured creditor must sell the goods within a reasonable time after the date set forth in the notice to the debtor."). In some cases, waiting for the bankruptcy case to close in order to obtain the right to dispose of the collateral may create a delay that is not commercially reasonable under state law. Consequently, a creditor may also need to obtain relief from the stay. Such a creditor, however, could reach the same end more effectively by simply obtaining relief from the stay, without a motion to compel in the first instance. Since the most common types of collateral affected by § 521(2) are residential real property and motor vehicles, mere repossession of the collateral through the debtor's compliance with a § 105 order to surrender property, without relief from the automatic stay, would often be an ineffective and incomplete remedy.

Why would a creditor press a motion to compel, which may also require a motion to lift the stay, when a motion to lift the stay alone would accomplish the same goal? In this case, the Bank argues that a motion to compel creates a more streamlined effectuation of the policy behind § 521(2). However, a motion to compel may often require additional judicial action such as a contempt order or an order lifting the stay. Although the Court does not question the Bank's sincerity, it is not convinced by its argument. Furthermore, other reasons may motivate other secured creditors. A secured creditor may be motivated by the fact that a $75 filing fee accompanies a motion to lift the stay, while a motion to compel requires no fee. *See Irvine*, 192 B.R. at 922. Or perhaps a creditor seeks a motion to compel in furtherance of a strong-arm tactic to pressure debtors into reaffirming or surrendering the collateral during the bankruptcy case.[9]

---

9. The potential of such tactics can be seen when one considers the interplay of a Chapter 7 discharge and the timing requirements of § 521(2). Because a reaffirmation agreement is not enforceable if it is entered into post-discharge, a creditor can attempt to obtain a reaffirmation agreement only until a discharge is granted. A Chapter 7 discharge will ordinarily be granted about sixty days following the § 341 meeting of creditors. *See* Fed.

Or perhaps a creditor seeks a motion to compel for use in post-bankruptcy negotiations or proceedings. Although such motivations may be legitimate, secured creditors may be motivated to seek routine relief under § 105 for reasons other than making the application of § 521(2) more efficient.

### 2. Dismiss the Case Pursuant to § 707(a)

Section 707(a) provides that a bankruptcy case can be dismissed for "cause." Some courts have held that a failure to comply with § 521(2) falls within the contours of § 707(a) and is "cause" warranting dismissal of the bankruptcy case. *See In re Harris,* 226 B.R. 924, 925 (Bankr. S.D.Fla.1998); *In re Green,* 119 B.R. 72, 73 (Bankr.D.Md.1990). Although § 707(a) provides three examples of when cause will exist, it is generally understood that this listing is merely illustrative and not exhaustive. *See In re Moses,* 171 B.R. 789, 794 (Bankr.E.D.Mich.1994). One of these examples is contained in subsection (a)(1), which provides that cause will be deemed to exist when there is "unreasonable delay by the debtor that is prejudicial to creditors...." Although the Bank has not requested dismissal as a remedy in this case, the Court notes that dismissal stands toward the more serious end of the remedy continuum and should thus not be used absent allegations warranting such a strong remedy.

### 3. Render the Underlying Debt Non–Dischargeable Pursuant to § 523(a)

Under § 523(a)(6), a debt is not dischargeable if it results from a "wilful and malicious injury by the debtor to another entity or to the property of another entity...." There is authority for holding a debt non-dischargeable under § 523(a)(6) for failure to comply with § 521(2). *See Bushey,* 204 B.R. at 664–65. However, *Bushey* did not involve a "garden variety" set of facts. Instead, it involved a situation in which the creditor could not reach the collateral through self-help measures. The Court implicitly limited its holding to such facts. After first explaining that lifting the stay is the "standard" remedy for a violation of § 512(2)(B), the Court, in reaching its conclusion that § 523(a)(6) provided the appropriate remedy, stated that "unlike a motor vehicle situation, there would be no self-help remedy possible for this creditor attendant with any modification of the automatic stay." *See id.* at 664. In this case, the Bank has not alleged any special facts that would warrant consideration of such a remedy.

### 4. Relief from the § 362 Stay

Section 362(d)(1) provides that the automatic stay may be lifted "for cause." Many courts considering the § 521(2) remedy issue conclude that failure to comply with § 521(2) constitutes "cause" for purposes of § 362(d)(1) and thus warrants relief from the stay. *See Irvine,* 192 B.R.

R.Bankr.P. 4004(c)(1). The § 341 meeting is held no fewer than twenty days and no more than forty days following the petition date. *See* Fed.R.Bankr.P.2003. Accordingly, a Chapter 7 discharge is generally ordered eighty to 100 days following the petition date. A creditor will not be able to seek an order compelling reaffirmation or surrender for a violation of § 521(2)(B) until forty-five days following the date the debtor filed its state-

ment of intention, which generally is filed with the petition and must be filed within thirty days of the petition date. Thus, a creditor could not obtain an order to compel until forty-five to seventy-five days following the petition date. An aggressive secured creditor could use a motion to compel as a tool to pressure a debtor into reaffirmation during the gap between expiration of the § 521(2)(B) period and the granting of a discharge.

at 922; *Tameling,* 173 B.R. at 628–29 ("This court agrees with those cases which state that failure to comply with § 521(2) constitutes cause to modify the automatic stay...."); *In re Greer,* 189 B.R. 219, 222 (Bankr.S.D.Fla.1995) ("The Eleventh Circuit has not specified the relief courts should provide to a creditor if a debtor fails to perform one of the alternatives required by § 521. The logical remedy here would appear to be to grant stay relief...."); *Crooks,* 148 B.R. at 873–74; *In re Logan,* 124 B.R. 729, 734 (Bankr. S.D.Ohio 1991). Some courts also maintain that lifting the stay is the standard and preferred method of remedying non-compliance with § 521(2). *See, e.g., DeJournette,* 222 B.R. at 97 ("In general, the preferred remedy is modification of the automatic stay...."); *Bushey,* 204 B.R. at 664 (stating that the "standard" remedy for a violation of § 521(2)(B) is modification of the automatic stay); *Logan,* 124 B.R. at 734 (stating that relief from the stay is "what § 521(2), and the Bankruptcy Code generally, contemplate.").

The Court finds the reasoning of these cases persuasive and thus concludes that relief from the automatic stay is the preferred remedy for a debtor's failure to comply with the requirements of § 521(2)(B). Such a violation will constitute "cause" for purposes of § 362(d)(1) in all but the most unusual cases. Such "cause" cannot exist until there has been a violation of § 521(2)(B) (i.e., not until the § 521(2)(B) forty-five day period expires and the debtor has not performed his or her intention). Of course, "cause" may exist for reasons independent of § 521(2) and thus relief from the stay may be available before the § 521(2)(B) time period runs. For example, "cause" may exist due to a lack of adequate protection. *See* § 362(d)(1).

### E. The Motion to Compel in this Case

In this case, rather than seeking relief from the automatic stay, the Bank has requested that this Court use its power under § 105 to compel the Debtors to surrender the Vehicle. A motion to compel under § 105 should be reserved for unique factual settings and not used as a routine part of providing remedies to secured creditors for a debtor's failure to perform his or her intention under § 521(2)(B). Neither in the Motion nor at the hearing did the Bank allege any facts which suggest that extraordinary relief is warranted in this case.

Section 521(2)(C) provides that "nothing in [§ 521(2)(A) or (B)] shall alter the debtor's or the trustee's rights" with regard to the relevant collateral. Accordingly, in fashioning remedies for non-compliance with § 521(2)(B), the rights of a debtor in collateral should not be altered to either the detriment or the benefit of the debtor. *See DeJournette,* 222 B.R. at 94. A corollary to this conclusion is that § 521(2) should also not be construed or enforced in a manner that beneficially or detrimentally alters the rights of a secured creditor. Granting a motion to compel after expiration of the forty-five day time period allowed under § 521(2)(B) has the effect of allowing additional time to debtors who are not performing the duties required of them under the Bankruptcy Code. Furthermore, this Court does not intend to routinely grant motions to compel as an aid to secured creditors seeking to avoid repossession and liquidation of collateral from debtors failing to perform their intention under § 521(2)(B). If the secured creditor wishes to exercise the rights it is entitled to under the provisions of Title 11, it should seek relief from the automatic stay. A motion for relief under § 362(d) will insure that the rights of the secured creditor as well as the interests of the

bankruptcy estate, trustee, and the debtor are considered and acted upon in an expedited manner that will result in the creditor obtaining an effective remedy if it establishes a right to such relief.

Relief from the automatic stay constitutes the appropriate remedy for "garden variety" violations of § 521(2)(B). Whether a given case is a "garden variety" one turns on its individual facts. For example, if collateral cannot be reasonably obtained through state law self-help measures, then relief from the stay alone may be ineffectual and thus may not be the appropriate remedy. Instead, a more serious remedy, such as an order to compel surrender or a motion for an order to show cause why the case should not be dismissed, may be appropriate. However, in this case the Bank has not alleged nor shown any special facts or circumstances that would warrant a more serious remedy such as an order compelling the Debtors to surrender the Vehicle. There is no showing that the Bank would have any unreasonable difficulty in effectuating its state law rights of repossession should the stay be lifted. The mere fact that ordering surrender might be more efficient for the Bank from a process standpoint, which is a debatable point, is not enough to warrant a more serious remedy. From the facts presented, this case appears to be of the "garden variety" type.

The Court also notes that before requesting a court-ordered remedy for a debtor's noncompliance with § 521(2)(B), a creditor should ordinarily make an effort to seek compliance through debtor's counsel and/or the trustee. If the debtor is *pro se* or if seeking compliance through debtor's counsel proves to be ineffective, then a creditor should involve the trustee. As discussed, § 704(3) charges the trustee to ensure performance. Pursuing compliance through the trustee may include requesting that the trustee remind the debtor of the duty to perform his or her stated intention. If seeking involvement of the trustee proves to be unsuccessful, a creditor may then seek the appropriate remedy from the Court. This approach has been followed by other courts. *See Logan,* 124 B.R. at 734 ("A creditor who believes it is entitled to relief under § 521(2) of the Code should first seek the involvement of the trustee. . . ."); *Credithrift of Am., Inc. v. Williams (In re Williams),* 64 B.R. 737, 738 (Bankr.S.D.Ohio 1986) ("It is inconsistent with this statutory scheme for a creditor to apply to the court for relief where a debtor has failed to perform his duties under § 521(2)(A) and (B), without alleging that it first sought the involvement of the trustee on the subject."). *See also* 4 King et al., *Collier on Bankruptcy* ¶ 521.10[4] (15th rev. ed.1998) (suggesting that a creditor may seek enforcement through the trustee). Such involvement of the trustee seems to be a natural outgrowth of the roles of the trustee and creditor as envisioned by Congress in adding §§ 521(2) and 704(3) to the Bankruptcy Code.

Although counsel for the Bank did forward a proposed reaffirmation agreement to the Debtors' counsel on March 18, 1999, there is no evidence that the Bank sought the Debtors' compliance with their statement of intention through the Debtors' counsel before the expiration of the § 521(2)(B) period or subsequent to the March 18, 1999 reaffirmation agreement. Furthermore, there is no evidence indicating that the Bank sought the assistance of the trustee.

### III. CONCLUSION

For the reasons stated above, the Court concludes that ordering the Debtors to surrender the Vehicle to the Bank is not

an appropriate remedy for the Debtors' violation of § 521(2)(B). For that reason, the Court declines to enter an order under § 105 and the Bank's motion to order surrender is denied.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance Federal Rule of Bankruptcy Procedure 7052.

Dated May 14, 1999.

J. MICHAEL DEASY, Bankruptcy Judge.